**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wendell LAYNE, Defendant–Appellant.**

**No. 97–5097.**

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1999.

Decided Sept. 16, 1999.

Paul W. Laymon, Jr. (argued and briefed), Asst. U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Susan G. James (argued and briefed), Susan G. James & Associates, Montgomery, AL, for Defendant–Appellant.

Before: JONES, COLE, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant Wendell Layne appeals an order entered by the district court on January 13, 1997, convicting and sentencing him to life in prison without parole for (1) three counts of conspiracy to manufacture, distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846; (2) aiding and abetting possession with intent to distribute cocaine in violation of 18 U.S.C. § 2 & § 841(a)(1); (3) attempting to possess with intent to distribute powder cocaine in violation of 21 U.S.C. § 841(a)(1) & § 846; (4) distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); (5) using and carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); (6) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); (7) obstruction of justice in violation of 18 U.S.C. § 1503; and (8) criminal forfeiture in violation of 21 U.S.C. § 853. Upon review, we AFFIRM in part and REVERSE in part the judgment of the district court.

## I.

### A. INVESTIGATION

In June or July 1994, Joe Copeland, a special agent with the Tennessee Bureau of Investigation ("TBI"), learned from Gary Bischoff that Gifford Fuller, an individual Copeland had arrested in 1985 for selling cocaine, was selling cocaine once again. Copeland arranged for Mike Finley, another TBI agent, to pose as a drug dealer from Florida and arranged for Bis-

choff to introduce Finley to Fuller. Finley set up a hotel room in Rhea County, Tennessee so that other agents could monitor and record the activity in the room. On the arranged meeting date, July 27, 1994, Bischoff introduced Finley to Steve Yearwood, an associate of Fuller. Finley, posing as a drug dealer, showed Yearwood a kilogram of cocaine.

The next day, Fuller himself came to meet Finley. Fuller sampled the cocaine and told Finley that although he did not have enough money to buy a kilogram, he would see someone who would have the money. The TBI followed Fuller to the residence of Defendant, located in Soddy–Daisy, Tennessee. Fuller then returned to the hotel room carrying a box containing a set of triple beam scales. Fuller told Finley that "his man" wanted him to buy an ounce of cocaine and to return the scales and ounce to him for sampling. (J.A. at 71.) Fuller said that if the man liked the cocaine, he would buy the kilogram. After Fuller paid about $1,350 for the cocaine, the TBI arrested him.

Fuller agreed to cooperate with the TBI, named Defendant as "his man," and agreed to assist the agents in their investigation of Defendant. Copeland scratched his initials onto the scales before Fuller returned them to Defendant. The agents recorded conversations between Fuller and Defendant, and heard Defendant complain that Fuller had kept the scales for so long that he had caused Defendant to miss out on opportunities to sell more cocaine. The conversations further revealed that Defendant was interested in Finley's cocaine because it was of better quality and cheaper, but would only buy it if Finley came to Defendant's residence. Because Defendant lived on a dead-end road where surveillance would be difficult, the investigation ended. Although Defendant agreed to sell Fuller a half ounce of cocaine, Defendant never showed up.

Copeland again began to investigate Defendant in 1996, with the assistance of Special Agent David Shelton of the United States Drug Enforcement Administration ("DEA"). They arranged to use Paul "Pete" Winesburgh as an informant, and from April to May 1996, the agents taped three conversations between Defendant and Winesburgh. On May 21, 1996, the agents asked Winesburgh to take three kilograms of cocaine, three guns, including a .357 Colt Python, ammunition, and assorted drug paraphernalia to Defendant with the explanation that Winesburgh had stolen the items from a drug dealer. The agents had sprayed these items, along with a cooler, with a special powder which could only be seen under a black light. When Winesburgh arrived at Defendant's residence, Defendant was present, along with Jerry Ables, Teresa Hicks, and Ed Goins. Defendant directed Ables to get a set of scales, cut into one of the cocaine packages to sample it, and then sent Ables to get tape to seal the package back up. After Defendant and Winesburgh negotiated a price, Defendant went to the neighboring residence of his mother and returned with $36,500 for Winesburgh. Defendant took the three kilograms and the Colt Python and paid Winesburgh in twenties and hundreds. Winesburgh left with the money and the two remaining firearms.

On May 22, 1996, DEA agents in possession of a warrant to arrest Defendant and monitoring Defendant's residence by airplane decided to move in when they spotted a pickup truck moving across Defendant's field. The agents discovered Defendant and Ables by an orange pickup truck, and found a small can with one kilogram of cocaine by Defendant, and another can with two kilograms of cocaine by Ables. They found a small amount of crack cocaine and $2,500 on Defendant's person. The agents found the Colt Python that Winesburgh gave to Defendant in Defendant's garage, and found other weapons in Defendant's trailer, his mother's home, and the garage, and found in Defendant's home empty gun boxes with serial numbers matching two of the guns found in Defendant's mother's home.

They also found Inositol that was used to cut cocaine, baggies, containers, and the scales on which Copeland had scratched his initials in Defendant's trailer and garages. Agents discovered $671,300 in twenties and hundreds in lock boxes and a safe located in Defendant's mother's home, and found traces of the special powder in Defendant's mother's home, as well as in the garage and Defendant's trailer.

## B. TRIAL

On June 12, 1996, the government filed an eleven-count indictment against Defendant, charging him in Counts 1, 4, and 6 with three counts of conspiracy to manufacture, distribute and possess with intent to distribute powder and crack cocaine in violation of 21 U.S.C. § 846; in Count 2 with aiding and abetting possession with intent to distribute powder cocaine in violation of 18 U.S.C. §§ 2 & 841(a)(1); in Count 5 with attempting to possess with intent to distribute powder cocaine in violation of 21 U.S.C. § 841(a)(1) & 846; in Count 7 with distribution and possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841; in Count 8 with using and carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); in Count 9 with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); in Count 10 with obstruction of justice in violation of 18 U.S.C. § 1503; and in Count 3 with criminal forfeiture in violation of 21 U.S.C. § 853.[1] On August 2, 1996, Defendant pleaded not guilty to every count.

At trial, the government introduced the testimony of Rhonda Pearce, who began buying cocaine from Defendant in 1981, 1982, or 1983, and bought cocaine from Defendant almost continuously through the time of his arrest in 1996. She testified that she usually bought cocaine from Defendant in one-sixteenth ounce quantities for $100 each, or in 3.3 gram quantities ("eight balls") for $200 each; that she occasionally saw other customers at Defendant's residence when she went to buy cocaine; and that Defendant occasionally gave her cocaine so that she would watch his mother, an elderly woman with vision problems who could not walk.[2] Pearce further testified that up until two years prior to Defendant's arrest, she often saw Debbie Arnold, Defendant's long-time girlfriend, at Defendant's home, and that Arnold became absent when Teresa Hicks moved in with Defendant.[3] Pearce testified that she began observing the presence of crack at Defendant's home after Hicks arrived, and that she (Pearce), Hicks, Ables and Defendant smoked crack together on several occasions. Pearce testified that generally, Defendant gave them the crack and they did not pay for it. Pearce also testified that on occasion she observed other individuals using crack at Defendant's home.

The government also offered the testimony of its informants, Fuller and Winesburgh. Fuller testified that he began buying cocaine from Defendant in 1992, and that he continuously bought cocaine from Defendant through the time of Defendant's arrest in 1994. Fuller stated that he generally bought half-ounces of cocaine from Defendant at a price of $850 to $1,000 on at least twenty to twenty-five occasions over two years. Fuller stated that he had never known Defendant to work but that he often saw Defendant with large sums of money.[4] Winesburgh, who had known De-

1. The government charged Ables as a co-conspirator in Counts 1, 2, and 3 of the indictment.

2. Mary Ables, the mother of Jerry Ables, corroborated that Defendant's mother could not see, was in poor health, and lived modestly.

3. During Defendant's trial, Arnold refused to testify on behalf of the government, and was held in civil contempt for her failure to testify.

4. However, Earl Stephens, who had known Defendant for twelve to fourteen years, testified on cross-examination that Defendant worked as a mechanic selling automobile parts and that Defendant also earned money by racing cars.

fendant for almost thirty years, testified that although he himself used marijuana, he had purchased cocaine three or four times from Defendant for a friend. During his stint as an informant, Winesburgh saw Defendant using his scales to weigh cocaine and selling it to customers in baggies. He also testified that Ables served as a lookout during drug sales and that Ables was present almost every time he went to see Defendant.

Finally, the government introduced the testimony of a forensic chemist who verified that the substance seized from Defendant's person at the time of his arrest was crack; that the three kilograms of substance recovered from the scene at the time of Defendant's arrest was cocaine; and that the kilogram of substance involved in the 1994 transaction with Fuller was cocaine as well. An agent with the Bureau of Alcohol, Tobacco & Firearms ("ATF") testified that the Colt Python, a .22 caliber rifle seized from the garage, and an Excam 9mm seized from Defendant's trailer were all firearms manufactured outside Tennessee. Agent Shelton of the DEA, who monitored and recorded conversations between Defendant and Winesburgh, testified that he chose the three weapons Winesburgh took to Defendant. Shelton further stated that the safe in Defendant's mother's closet had a combination dial and that the combination was in Defendant's wallet, and that the keys to the lock boxes in Defendant's mother's home were in Defendant's pickup truck and his trailer.

## C. VERDICT AND SENTENCING

On September 6, 1996, Defendant moved for acquittal on Counts 1, 2, 3, 4, 8 and 10. The district court denied Defendant's motion. Three days later, on September 9, 1996, the jury returned a verdict of guilty against Defendant as to all counts, and against Ables as to Counts 1 and 2. After the trial, the district court held a criminal forfeiture proceeding as to Count 3 of the indictment. The jury found for the government with the exception of a Silverado truck and a Monte Carlo vehicle.

The United States Probation Office prepared a presentence report for Defendant, and Defendant filed objections to it on December 9, 1996. Defendant also filed objections to the government's attempt to enhance Defendant's sentence under 21 U.S.C. § 851. On December 9, 1996, Defendant appeared for sentencing, and the district court entered certain exhibits and made findings regarding Defendant's prior convictions. On January 3, 1997, at the continuation of the earlier sentencing hearing, the district court sentenced Defendant to a term of life in prison without parole on Counts 1, 2, 4, 5, 6, and 7, a concurrent term of 120 months' imprisonment on Counts 9 and 10, and a concurrent term of five years' imprisonment on Count 7. On the same date, the district court entered a preliminary order of forfeiture. Defendant filed a timely notice of appeal.

## II.

### A. SUFFICIENCY OF THE EVIDENCE

At the outset, we observe that although Defendant purports to challenge the sufficiency of the evidence supporting all counts, he has not mentioned or presented any argument as to the insufficiency of evidence supporting Count 2, charging him with aiding and abetting possession with intent to distribute cocaine, and Count 7, charging him with distribution and possession with intent to distribute crack. Moreover, although in his brief Defendant mentioned Count 5, charging him with an attempt to possess with intent to distribute powder cocaine, he makes no legal argument defending against the conviction, claiming instead that he did not participate in a crack conspiracy. (Appellant's Br. at 26.) Since "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *McPherson v. Kelsey*, 125 F.3d

989, 995–96 (6th Cir.1997), we conclude Defendant has waived his right to appellate review of his challenge to the sufficiency of the evidence supporting these counts. We therefore address his challenges to the sufficiency of evidence on all counts with the exception of Counts 2, 5, and 7. When reviewing challenges to the sufficiency of the evidence supporting criminal convictions, we must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir.1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We must also resolve all reasonable inferences in favor of the government. *See United States v. Palomino*, 100 F.3d 446, 451 (6th Cir.1996).

### 1. Drug Conspiracy Convictions

 To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *See United States v. Welch*, 97 F.3d 142, 148–49 (6th Cir.1996). In a § 846 conspiracy, the government must show the willful formation of a conspiracy and the willful membership of the defendant in the conspiracy, but need not prove that defendant committed an overt act in furtherance of the conspiracy. *See United States v. Spearman*, 186 F.3d 743, 745–47 (6th Cir.1999) (citing *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir.1986)). While the government must show the defendant "agreed to participate in what he knew to be a joint venture to achieve a common goal," the government need not prove an actual agreement. *Id.* Rather, a factfinder may infer the existence of a drug conspiracy from the interdependence of the enterprise, or may "assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom

they buy and to whom they sell." *Id.* The government may meet its burden of proof through circumstantial evidence. *See id.* Defendant argues that the government failed to bring forth sufficient evidence of his participation in the drug conspiracies alleged in Counts 1, 4, and 6, and that thus the evidence presented shows merely that he is a drug user who regularly purchased cocaine. While we disagree as to Counts 1 and 4, we agree with Defendant that the government failed to produce sufficient evidence to support his conviction in Count 6.

### a. Count 1: Conspiracy with Ables

 Count 1, which relates to conduct concluded on May 21, 1996, charged a conspiratorial relationship between Defendant and Ables to distribute and possess with intent to distribute powder cocaine. Defendant suggests there is no evidence proving that Ables was more than merely present at Defendant's home at the time of Defendant's arrest. Indeed, a defendant's mere presence in a home containing drugs or his mere proximity to drugs does not by itself demonstrate a drug conspiracy. *See United States v. Peters*, 15 F.3d 540, 544 (6th Cir.1994).

Here, however, the evidence clearly demonstrates that Ables and Defendant worked together to achieve the common goal of violating drug laws. Pearce and Winesburgh both testified that Ables served as a "lookout" for Defendant during Defendant's drug transactions. Winesburgh testified that on May 21, 1996 he observed as Defendant asked Ables to get a set of triple beam scales, and to get tape to seal up a cocaine package from which Defendant took a sample, and watched Ables comply with Defendant's commands. Moreover, on the day of the arrest, agents found Ables with Defendant, and found two kilograms of cocaine by Ables and one by Defendant. Viewing this evidence in the light most favorable to the government, a rational trier of fact could conclude from the circumstances surrounding Ables'

involvement that Ables and Defendant were co-conspirators. *See United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986). Therefore, we find that the government produced sufficient evidence of Defendant's involvement in a drug conspiracy to support his conviction on Count 1.

### b. Count 4: Conspiracy with Fuller

 Count 4, which relates to conduct concluded on July 1, 1994, refers to the existence of a conspiracy between Defendant and informant Fuller to possess with intent to distribute powder cocaine. Defendant alleges that no more than a buyer-seller relationship existed between him and Fuller. We have recognized that "a buyer-seller relationship is not alone sufficient to tie a buyer to a conspiracy." *United States v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir.1977). However, additional evidence beyond the mere purchase or sale of drugs, such as evidence of repeat purchases or some enduring arrangement that implies knowledge of the scope of the conspiracy may support a conspiracy conviction. *See United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir.1996) (citing *United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir.1990)).

The evidence at trial showed that Defendant regularly distributed cocaine to Fuller and that when Agent Copeland approached Fuller about a kilogram of cocaine, Fuller indicated that Defendant would want to buy the kilogram. Fuller visited Defendant and obtained from Defendant a set of triple beam scales for use in the drug transaction. The evidence also showed that Defendant demanded the return of his scales and complained to Fuller that he was losing business without them. The evidence, taken in the light most favorable to the government, reveals that Defendant was "not simply a street buyer engaging in a discrete transaction, but that he knew he was involved in an ongoing conspiracy of some dimension." *United States v. Phibbs*, 999 F.2d 1053, 1064 (6th Cir.1993). Therefore, we find

that sufficient evidence of a conspiracy, beyond a mere buyer-seller relationship, existed to support a conviction on Count 4 against Defendant.

### c. Count 6: Conspiracy to Distribute Crack

 Although the government produced sufficient evidence of drug conspiracies in Counts 1 and 4, we agree with Defendant that the same cannot be said for Count 6, which targeted conduct from March 1996 through May 21, 1996 and charged Defendant with a conspiracy "to manufacture, distribute, and possess with intent to distribute crack cocaine" in violation of § 841(a)(1) and § 846. (J.A. at 35.) To prove a conspiracy under § 846, the government must show an agreement by two or more persons to violate federal drug laws and knowledge of, intention to join, and participation in the conspiracy on the part of each conspirator. *See United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir.1998). Here, the government failed to show that two or more persons agreed to manufacture, distribute, and possess crack with intent to distribute, and thus failed to prove a violation of § 841(a)(1) and § 846.

The sum total of the government's evidence regarding Defendant's involvement with crack cocaine came from the testimony of Rhonda Pearce. Pearce testified that she saw crack cocaine at Defendant's residence after Hicks arrived there, and that she thereafter began using crack cocaine regularly with Defendant, Ables and Hicks. Although Pearce stated that Ables would serve as Defendant's "lookout" during his powder cocaine sales, Pearce did not characterize Ables as a "lookout" during times they used crack together. Pearce also testified that Defendant did not charge her for the crack cocaine, although he charged her for powder cocaine. Pearce testified that she saw others *using* crack at Defendant's home; not that others *purchased* crack at Defendant's home.

At best, the government proved that Defendant himself distributed crack and possessed crack with intent to distribute—an offense for which the government charged and convicted Defendant in Count 7 under § 841(a)(1). *See United States v. Washington*, 41 F.3d 917, 920 (4th Cir. 1994) (holding that a person who shares drugs with a friend possesses the drug with an intent to distribute in violation of § 841(a)(1)). The offense charged in Count 6 is conspiracy to distribute or to possess with intent to distribute crack cocaine, and is different from that in Count 7 only by virtue of the fact that a conspiracy conviction requires proof of an agreement to commit the substantive offense. *See United States v. Fife*, 573 F.2d 369, 373 (6th Cir.1976). Thus, without proof of an agreement between Defendant and Pearce, Hicks, Ables or some other person to distribute crack or to possess crack with an intent to distribute it, the government failed to prove a separate offense of conspiracy.[5] *Cf. Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (describing separate offenses in double jeopardy context as ones where "each provision requires proof of a fact which the other does not").

Notably, the government may have proved that Defendant conspired with others to use crack cocaine—at most, a violation of 21 U.S.C. § 844(a), which criminalizes simple possession. Pearce, Ables, and Hicks appear to have conspired only to possess crack for personal use, and not to possess crack with the intent to distribute it. *See United States v. Swiderski*, 548 F.2d 445, 450 (2d Cir.1977) (observing that where two individuals acquire possession without an intent to distribute the drug to a third person, "neither serves as a link in the chain of distribution" and "they must therefore be treated as possessors for personal use than for further distribution").

Moreover, the government did not introduce evidence of a large quantity of crack to support the inference of a conspiracy to distribute, as opposed to a conspiracy to possess crack. *See United States v. Vincent*, 20 F.3d 229, 233 (6th Cir.1994). Again, what is lacking is proof of an agreement between Defendant and one other person to distribute or to possess with intent to distribute. Indeed, there is no evidence that Defendant and another person conspired to distribute crack, or that Defendant and another person had a tacit agreement to possess crack with the intention of distributing it. In the absence of such a showing, we find that the government did not present sufficient evidence of a crack conspiracy to sustain Defendant's conviction on Count 6 of the indictment.

### 2. Section 924(c)(1) Conviction

 Section 924(c)(1) provides for specific punishment of "whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1). Where an indictment, such as the one in this case, charges a defendant with both "using" and "carrying" a firearm under § 924(c)(1), evidence sufficient to support a conviction under either element will sustain a § 924 conviction. *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998). In the present case, the government first argues that it presented evidence that Defendant "used" the Colt Python during his drug transaction with Winesburgh, and argues alternatively that there is sufficient evidence to support that Defendant "carried" the Colt Python when Winesburgh left him with it. As the government fails to persuade us, we agree with Defendant that the government failed to adduce sufficient evidence that Defendant used or carried a firearm during and in relation to a drug

---

**5.** Notably, Count 6 differs from the conspiracy charges raised in Counts 1 and 4 in that in Count 6 the government failed to name a co-conspirator. In Count 1, the government alleged that Defendant conspired with Ables, and in Count 4, the government alleged that Defendant conspired with Fuller and Yearwood, government agents who could not be prosecuted for their actions here.

trafficking offense in violation of § 924(c)(1).

In *Bailey v. United States*, the Supreme Court interpreted the "use" prong of § 924(c)(1) to reject the notion that "mere possession of a firearm by the drug offender, at or near the site of a drug crime or its proceeds or paraphernalia" would constitute "use." 516 U.S. 137, 149, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Court applied an ordinary meaning analysis to § 924(c)(1) and concluded that the natural definitions of the term "'use' imply action and implementation" on the part of a defendant. *Id.* at 145, 116 S.Ct. 501. As we have recognized, *Bailey* redefined "use" to mean "active employment," so as to include "brandishing, displaying, bartering, striking with, firing or attempting to fire a firearm." *Rattigan v. United States*, 151 F.3d 551, 554–55 (6th Cir.1998) (quoting *Bailey*, 516 U.S. at 143, 148, 116 S.Ct. 501). The government argues that Defendant met this definition of "use" "when he acquired the Colt .45 Python pistol with the three kilograms of cocaine." (Appellee's Br. at 45.)

In light of our decision in *United States v. Warwick*, 167 F.3d 965 (6th Cir.1999), the government's argument must fail. In *Warwick*, we held that a defendant's "passive receipt of the shotgun from the undercover officer in exchange for marijuana did not constitute a 'use' of a firearm within the meaning of § 924(c)." *Id.* at 975. Although *Warwick* involved a government-engineered undercover drug transaction in which government agents offered the defendant a firearm in exchange for drugs, instrumental to our conclusion was the principle that "[a] defendant who does nothing more than accept a weapon offered to him by an undercover officer cannot be said to 'actively' do anything with that weapon because receipt and acceptance is inherently passive conduct." *Id.* at 976. The *Warwick* decision also relied on the fact that it was government agents, and not the defendant, who "injected the fire-

arms into the equation" or who "introduced the gun into the transaction." *Id.* We found no § 924(c)(1) violation where the government could offer no evidence that the defendant himself "affirmatively utilized" the firearm in connection with the drug sale. *Id.*

The instant case is directly governed by *Warwick* on the issue of whether Defendant "used" a firearm during his drug transaction with Winesburgh. As in *Warwick*, here it was the government that selected the weapon introduced in the transaction and that injected the Colt Python into the equation—and Defendant passively received it. Even if we were to set *Warwick* aside, however, we note that the government failed to prove that Defendant actively employed the Colt Python during and in relation to the transaction with Winesburgh, that Defendant utilized the firearm to implement the drug transaction, or even that Defendant bartered the firearm for drugs. *Cf. Smith v. United States*, 508 U.S. 223, 241, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (holding that a "criminal who trades his firearm for drugs 'uses' it during and in relation to a drug trafficking offense"). Consequently, we believe the government failed to produce sufficient evidence that in receiving a Colt Python during his transaction with Winesburgh, Defendant "used" a firearm in violation of § 924(c)(1).

■■■■ We find equally inconsequential the government's claim that Defendant "carried" the Colt Python in that he possessed it after Winesburgh left the drug transaction, and that Defendant "violated § 924(c)(1) even after the transaction with Winesburgh was completed." (Appellee's Br. at 47.) Under the ordinary definition of "carry" that we are bound to apply in this context, *see Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 1916, 141 L.Ed.2d 111 (1998), it is arguably true that Defendant "carried" the Colt Python away from the drug transaction.[6] Howev-

---

**6.** In *Muscarello*, the Court expressed its belief that an ordinary interpretation of the word

er, a defendant does not violate § 924(c)(1) merely by carrying a firearm. Rather, he must "carry" the firearm "during and in relation to" his drug trafficking offense. The phrase "in relation to" is a statutory requirement that illuminates the provision's boundaries. *See Smith*, 508 U.S. at 237, 113 S.Ct. 2050. Indeed, the Court has adopted the view that Congress used the phrase in order to " 'allay explicitly the concern that a person could be' punished under § 924(c)(1) ... even though the firearm's presence is coincidental or entirely 'unrelated' to the crime." *Id.* at 238, 113 S.Ct. 2050 (citing *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir.1985)). The words "in relation to" are "limiting words" that apply to the "carry" prong of the statute. *Muscarello*, 118 S.Ct. at 1918–19.

■■■ Assuming that Defendant "carried" a firearm under § 924(c)(1) when he took the Colt Python away from the drug transaction with Winesburgh, we cannot say that, at that point, he "carried" a firearm "during and in relation to" a drug trafficking offense. Although Defendant potentially "carried" the Colt Python, he did so after the completion of the drug trafficking offense, and not "during" it. Moreover, to meet the "during and in relation to" requirement, a firearm "must have some purpose or effect with respect to the drug trafficking crime," and "at least must 'facilitate, or have the potential of facilitating,' the drug trafficking offense." *Smith*, 508 U.S. at 238, 113 S.Ct. 2050 (quoting *Stewart*, 779 F.2d at 540); *see also United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996) (requiring the government to prove "that the firearm furthered the purpose or effect of the crime"). The Colt Python did not in any way further the purpose or effect of the drug trafficking offense or play an integral role in the transaction, since Defendant, who apparently did not ask to purchase a firearm

when he arranged the deal with Winesburgh, would have purchased cocaine even if the Python were not present. *Cf. Smith*, 508 U.S. at 238, 113 S.Ct. 2050 (finding "in relation to" requirement met where the deal would not have been possible without the firearm). Nor did the unexpected Colt Python facilitate drug trafficking "by emboldening the defendant, giving him the security and confidence to undertake the criminal act." *United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990).

The government asks us to affirm the § 924(c)(1) conviction of Defendant in essence because he possessed a firearm after the completion of a drug trafficking offense, even though we have long observed that "[h]owever broadly it may be construed, section 924(c)(1) will not support conviction for mere possession of a firearm during the course of criminal conduct." *Brown*, 915 F.2d at 224; *see also United States v. Clemis*, 11 F.3d 597, 600 (6th Cir.1993). Similarly, the government invites us to find that a defendant who receives a firearm from a government agent who purported only to sell him drugs violates § 924(c)(1). Because we decline to adopt these untenable constructions of § 924(c)(1), we must conclude the government failed to sufficiently prove that Defendant "used or carried" a firearm "during and in relation to" a drug trafficking offense in violation of § 924(c)(1).

### 3. Section 922(g)(1) Conviction

■■■ Under 18 U.S.C. § 922, it is unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition...." 18 U.S.C.A. § 922(g)(1) (West Supp.1999). To convict under § 922(g)(1), the government must prove that (1) the defendant had a previous felony conviction; (2) the defendant possessed

"carry" accords with the basic purpose and legislative history of § 924(c)(1). 118 S.Ct. at 1916. However, the use of the word "carry" proposed by the government in this case does not agree with the legislative intent identified

in *Muscarello*. Indeed, the Court found that the primary purpose of § 924(c)(1) was to persuade "a criminal to 'leave his gun at home.' " 118 S.Ct. at 1916.

a firearm; and (3) that the firearm traveled in or affected interstate commerce. *See United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir.1991). While Defendant does not challenge that he was a felon at the time of his arrest or that the firearms identified by the government traveled in interstate commerce, Defendant argues that the government failed to adduce sufficient evidence that he possessed the firearm to support a conviction under Count 9 of the indictment. We disagree.

 The government may prove possession under § 922(g)(1) by proving constructive possession, which exists "when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973). Moreover, the government can prove a defendant's control over firearms by showing that he has dominion over the premises in which the firearms are located. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998) (citing *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir.1993)). Here, the evidence is overwhelming that Defendant possessed control over the firearms which form the basis of the § 922 charge. Agents seized a rifle, the Colt Python, and ammunition for the rifle from Defendant's garage, and seized a loaded 9mm pistol from the dresser by Defendant's bed. As Defendant has not argued that he exercised no control or dominion over these locations, we find that, taken in the light most favorable to the government, sufficient evidence existed for a rational factfinder to infer that Defendant possessed firearms in violation of § 922(g)(1).

### 4. Obstruction of Justice Conviction

 The federal obstruction of justice statute criminalizes one who "by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice...." 18 U.S.C.A. § 1503 (West Supp.1999). The Supreme Court has characterized the aforementioned part of § 1503 as a general "omnibus clause" that "serves as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice." *United States v. Aguilar*, 515 U.S. 593, 598, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). We have held that to convict under § 1503, the government "must prove that there was a judicial proceeding underway that the defendant's actions were intended to obstruct," and a grand jury investigation is such a proceeding. *United States v. Mullins*, 22 F.3d 1365, 1370 (6th Cir.1994). The government charged Defendant with a violation of § 1503 in connection with his attempt to influence the testimony of Pearce. Defendant argues the government failed to present sufficient evidence of a § 1503 violation because the government failed to show that any actions by Defendant impacted Pearce's grand jury testimony. Again, we disagree.

 The government need not show that the defendant succeeded in his attempt to interfere; a mere "endeavor" suffices. *Aguilar*, 515 U.S. at 599, 115 S.Ct. 2357 (citing *United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921)). Defendant's argument is therefore misplaced, as the government needed only to prove that he attempted to influence Pearce's testimony. At trial, the government introduced the testimony of Pearce herself, who stated that Defendant called her twice from jail and told her that she did not know anything and did not see anything. (Appellee's Br. at 32.) Taking the evidence in the light most favorable to the government with respect to Count 10, we find that the government presented sufficient evidence of an endeavor by Defendant to influence Pearce's testimony. Therefore, the government presented sufficient evidence to convict Defendant of obstruction of justice beyond a reasonable doubt.

## B. EVIDENTIARY ISSUES

 Defendant attacks the district court's decision to admit into evidence (1) the fact that Defendant had stolen cars with Winesburgh; (2) the fact that agents seized numerous firearms from his mother's home; and (3) his federal income tax information. He objects to the admission of his past activities with Winesburgh and his tax returns as erroneous under Rule 404(b), while he objects to the admission of weapons found at his mother's home under Rule 403, and claims that these evidentiary rulings entitled him to a mistrial. This Court reviews the denial of a motion for mistrial for an abuse of discretion. *See United States v. Ursery,* 109 F.3d 1129, 1133 (6th Cir.1997). We review a lower court's rulings on the admissibility of evidence that implicates Rules 403 and 404(b) of the Federal Rules of Evidence for an abuse of discretion. *See United States v. Murphy,* 107 F.3d 1199, 1206 (6th Cir. 1997); *United States v. Sanders,* 95 F.3d 449, 453 (6th Cir.1996).

 Upon review, we find no reversible error in the evidentiary rulings challenged by Defendant. Under the Federal Rules of Evidence, all relevant evidence is admissible. *See* Fed.R.Evid. 402. However, a court may exclude relevant evidence whose "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Moreover, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith," although such evidence might be relevant and admissible for other purposes, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

 First, as the government proffers no permissible purpose for the introduction of Agent Copeland's testimony that Defendant once stole cars with Winesburgh, we agree with Defendant that the admission of such evidence was error under Rule 404(b). However, the Federal Rules of Criminal Procedure provide that an error "which does not affect substantial rights shall be disregarded." Fed. R.Crim.P. 52. To determine whether the admission of Rule 404(b) evidence was harmless error, we consider the impact of the error upon the right of the defendant to a fair trial. *See United States v. Reed,* 647 F.2d 678, 687 (6th Cir.1981). When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error. *See, e.g., United States v. Copeland,* 51 F.3d 611, 615 (6th Cir.1995); *Reed,* 647 F.2d at 687. Moreover, the giving of a curative instruction by the trial court occasionally renders harmless the erroneous admission of prejudicial evidence. *See United States v. Walton,* 908 F.2d 1289, 1293–94 (6th Cir.1990). In this case, the evidence against Defendant was overwhelming, and the district court gave a curative instruction. We therefore believe that while admission of Defendant's prior bad acts was error, it was harmless error that did not warrant the grant of a mistrial.

 Second, we reject Defendant's contention that the district court abused its discretion in admitting evidence of firearms seized from Defendant's mother's home. This Court must review evidence challenged under Rule 403 "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993) (citation omitted). Moreover, the district court enjoys broad discretion in balancing probative value against potential prejudicial impact. *See United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991). Here, the government presented evidence linking the guns found in Defendant's mother's home to empty gun boxes found in Defendant's home. The government

also introduced ample evidence linking Defendant's drug operation to his mother's home. Defendant obtained money to pay Winesburgh for drugs and firearms from his mother's home. Agents discovered traces of the special powder they had used on the safe and lock boxes in Defendant's mother's home, and discovered the keys to the lock boxes and the combination to the safe in Defendant's possession. The government also presented testimony suggesting that Defendant's mother, who could not see, likely did not use the firearms found in her residence. When the evidence is considered in the light most favorable to the government, and given the deference this Court must pay to the district court in these matters, we conclude that the district court did not abuse its discretion in admitting evidence of firearms found in Defendant's mother's home.

▇▇▇▇ Finally, we think the admission of Defendant's federal income tax information did not ·constitute reversible error. As a general rule, this Court frowns on the admission of income tax returns in narcotics cases where the government has not charged the defendant with both narcotics and tax law violations. *See United States v. Carter*, 969 F.2d 197, 200 (6th Cir.1992). However, in *Carter*, we recognized that the admission of income tax returns is permissible (1) where the government has charged the defendant with operating a continuing criminal enterprise, or (2) in narcotics cases where the defendant engaged in extravagant spending or possessed massive unreported wealth. *See id.* at 201. In the latter kind of case, the government may use the lack of a federal tax filing or the underreporting of income in combination with evidence of extravagance to create "the inference that the defendant does not possess a legitimate source of income to support his affluent lifestyle and, therefore, the income must originate from narcotics operations." *Id.*

Here, Defendant paid Winesburgh $36,500 in cash for drugs and firearms, and agents discovered $671,300 in cash in a safe in Defendant's mother's home that was subject to Defendant's control. Agents also discovered a 1968 Chevrolet Nova racing car in Defendant's garage. Moreover, if Defendant was, as he claimed, a self-employed mechanic, he was required to file federal tax returns but failed to do so from 1986 through 1988 and 1990 through 1995, and filed a tax return in 1989 reporting only $1,442 in income. Thus, the government showed that Defendant had great unreported wealth. Given these facts, we think the district court did not abuse its discretion in admitting evidence of Defendant's federal income tax information.

## C. JURY INSTRUCTION

▇▇▇▇ Defendant argues next that the district court erred by instructing the jury that a preponderance of the evidence standard of proof applies to criminal forfeiture. We review jury instructions as a whole to determine whether they adequately inform the jury of relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. *See United States v. Sheffey*, 57 F.3d 1419, 1429–30 (6th Cir. 1995) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir.1993)). We are not to reverse the trial court unless the jury charge "fails accurately to reflect the law." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988).

▇▇▇▇ This Court has held that the government must prove that property is subject to criminal forfeiture under § 853(a) by a preponderance of the evidence. *See United States v. Smith*, 966 F.2d 1045, 1052 (6th Cir.1992). Defendant concedes that under *Smith*, the district court did not err by instructing the jury to apply a "preponderance of the evidence" and not a "beyond a reasonable doubt" standard to the criminal forfeiture count against him. Although Defendant claims he raises the issue "in order to preserve his rights should this Court decide to rehear the issue en banc or should future

controlling authority mandate a different result," *Smith* remains good law. Moreover, one "panel of this Court cannot overrule the decision of another panel" and "the prior decision remains controlling authority" unless this Court overrules that prior decision en banc or a ruling by the Supreme Court mandates its modification. *See Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 839 (6th Cir.1997). Consequently, we conclude that the district court did not err in giving a "preponderance of the evidence" instruction on the criminal forfeiture count.

### D. SECTION 851 SENTENCE ENHANCEMENT

■ Defendant challenges the constitutionality of his sentence on two distinct grounds. First, he contends that his sentence is constitutionally infirm because the government failed to give him adequate notice of its intent to use his prior convictions to enhance his sentence as required by law. Second, he contends that his sentence is invalid because the district court erroneously relied on state convictions obtained in violation of his constitutional rights in enhancing his sentence under § 851. While the sufficiency of a § 851 information is a question of law this Court reviews de novo, *see United States v. King*, 127 F.3d 483, 487–88 (6th Cir.1997), we review a district court's factual determinations regarding a criminal defendant's prior convictions for clear error. *See United States v. McAdams*, 25 F.3d 370, 374 (6th Cir.1994).

### 1. Section 851 Notice Requirement

■ A defendant convicted of a violation of § 841(a)(1) is subject to sentence enhancement on the basis of prior drug-related convictions. *See* 21 U.S.C. § 841(a)(1). If the government wishes to subject a convicted defendant to increased punishment by reason of one or more prior

convictions, it must file an information with the court and with the defendant stating in writing the previous convictions upon which it intends to rely before trial or before entry of a guilty plea. *See* 21 U.S.C.A. § 851(a)(1) (West 1981).[7] The requirement is mandatory, and a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies the requirement. *See United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir.1990). The information must provide the defendant with reasonable notice of the government's intent to rely on a particular conviction, and a meaningful opportunity to be heard. *See King*, 127 F.3d at 488 (quoting *United States v. Gonzalez–Lerma*, 14 F.3d 1479, 1485 (10th Cir.1994)). The safeguards of § 851(a)(1) fulfill constitutional due process requirements. *See Gonzalez–Lerma*, 14 F.3d at 1485.

On August 12, 1996, the government filed an information entitled "Notice of Intent to Use Prior Convictions to Impeach and to Enhance Punishment" which listed three felony non-drug convictions and referred to felony drug convictions in 1981, 1985, and 1988 for Defendant. (J.A. at 48.) On August 29, 1996, the government filed a supplement to its August 12 information and entitled it "Supplement to Notice of Intent to Use Prior Convictions to Impeach and to Enhance Punishment." (J.A. at 49.) The supplemental information provided more specific details regarding Defendant's prior felony drug convictions, which actually took place in Hamilton County, Tennessee in 1981, 1986, and 1989. Neither information expressly referenced § 851. Defendant went to trial in September 1996. Before this Court, Defendant argues that these notices filed by the government did not comply with § 851 because they did not provide adequate notice to him of the precise convictions upon which the gov-

---

7. The protections of § 851 apply only to statutory sentencing enhancement, and not to sentence enhancement under the Guidelines. *See United States v. Meyers*, 952 F.2d 914, 919 (6th Cir.1992).

ernment intended to rely, and because they did not refer to § 851. Because we believe the notice provided by the government was not inadequate, we disagree.

■ First, contrary to Defendant's claim that the government did not comply with the statute by failing to refer to § 851 in its information, we observe that the statute is silent on whether the government must actually cite the statute in the information it files. This Court has emphasized "the importance of interpreting § 851's notice requirements so as to avoid elevating form over substance." *King*, 127 F.3d at 489; *see also United States v. Coffelt*, No. 91–5703, 1992 WL 78106, at *3 (6th Cir.1992) (unpublished) (finding § 851 information sufficient where government referred to § 841 and not § 851 but gave defendant adequate notice of its intent). In *King*, this Court made clear that ultimately, a § 851 information is sufficient if it provides reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence. 127 F.3d at 489.

■ In his argument to this Court, Defendant ignores the supplemental information and does not contend that it failed to provide him with adequate notice of prior convictions. A review of the supplemental information discloses that it provided Defendant with details regarding three prior drug convictions upon which it intended to rely for sentence enhancement; the record shows the government relied on precisely those convictions. Defendant does not allege that the government relied on some other prior convictions not listed in the filed information. As for Defendant's claim that the information filed by the government failed to provide him with the reasonable notice discussed in *King*, the statute is also silent on the specificity with which the government must identify prior convictions. The statute does suggest a lesser emphasis on specificity when it states that "[t]he failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the

convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section." 21 U.S.C.A. § 851(c)(1) (West 1981). While the list of convictions provided by the government was extensive and did not single out certain convictions as those on which it intended to rely, nothing in § 851(a)(1) required the government to do such a thing. Nor does § 851(a)(1) limit the number of convictions on which the government may rely; indeed, the government could have argued that every one of Defendant's prior and listed convictions warranted sentence enhancement. As the government did all that § 851(a)(1) requires, we find no reversible error in its failure to specify its intent to rely on the felony drug convictions from 1981, 1986, and 1989. *Cf. United States v. Vanness*, 85 F.3d 661, 664 (D.C.Cir.1996) (declining "to demand strict compliance with something about which § 851(a)(1) is silent").

In any event, Defendant has not shown that by giving him a general list of his prior convictions, the government deprived him of reasonable notice or a reasonable opportunity to be heard on the availability of his prior convictions for enhancement. Defendant concedes that he "was not surprised by the enhanced sentence, was aware from the outset that his previous conviction could lead to an enhanced sentence, and admitted the prior conviction (without challenging it) at the sentencing hearing." (Appellee's Br. at 35.) Under *King*, we think Defendant received reasonable notice and an opportunity to be heard on his prior convictions, and conclude that the § 851 information filed by the government was adequate.

## 2. Validity of Prior Convictions under § 851

■ Under § 851, a defendant may claim that a prior conviction listed in the government's information was obtained in violation of the Constitution. *See* 21 U.S.C.A. § 851(c)(2) (West 1981). A de-

fendant making such a collateral attack on a prior conviction must set forth his claim and the factual basis for it, and must prove any issues of fact that he raises by a preponderance of evidence. *See id.* In this case, Defendant claims that his prior felony drug convictions, which occurred in 1986 and 1989, were entered in violation of the Constitution because they resulted from guilty pleas that were not knowing and voluntary. We disagree, and believe the district court properly concluded that Defendant's prior felony drug convictions were valid and properly considered under § 851.

As a preliminary matter, we agree with the government that the statute bars Defendant's attempt to attack the validity of his 1986 and 1989 convictions. Under § 851, a defendant may not challenge the validity of a prior conviction "which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C.A. § 851(e) (West 1981). This Court has applied § 851(e) to bar defendants from collaterally attacking convictions that occurred more than five years prior to the filing of a § 851 information. *See, e.g., United States v. Jenkins,* 4 F.3d 1338, 1343 (6th Cir.1993) (barring attack on 1981 conviction but not on 1986 conviction where information filed in 1991). Here, the government filed both its information and its supplemental information in August 1996, ten years after Defendant's 1986 conviction and seven years after Defendant's 1989 conviction. Consequently, § 851(e) bars Defendant's claims.

 In any event, Defendant's attack on his prior convictions lacks merit. A guilty plea, which amounts to the waiver of the constitutional rights against self-incrimination, to trial by jury, and to confront one's accusers, is only valid if it is entered intelligently and voluntarily. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). This Court must consider all of the relevant circumstances surrounding the guilty plea to determine its voluntariness. *See Unit-*

*ed States v. McGlocklin,* 8 F.3d 1037, 1047 (6th Cir.1993). A guilty plea is involuntary where the defendant lacks knowledge of an element of the offense required for conviction and therefore does not understand the nature of the charge against him, or does not understand the nature of the constitutional rights he is waiving. *See Henderson v. Morgan,* 426 U.S. 637, 644–45 & n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Thus, a guilty plea is valid when it is "an intentional relinquishment or abandonment of a known right or privilege." *Boykin,* 395 U.S. at 243 n. 5, 89 S.Ct. 1709 (citations omitted).

 Transcripts of the plea hearings for Defendant's 1986 and 1989 Tennessee drug convictions make clear that Defendant knowingly and intelligently waived his rights when he entered guilty pleas. (Appellee's Br. at 40–42.) The judge who took Defendant's plea in 1986 asked Defendant at length if he knew the nature of the constitutional rights he was waiving, and received an affirmative response from Defendant. Similarly, in 1989, the judge who took Defendant's plea informed Defendant of all of the rights he would waive by pleading guilty, asked Defendant if he understood the nature of the proceeding, and received an affirmative response from Defendant. Defendant offered nothing to the district court and offers nothing to this Court to suggest that Defendant did not in fact understand the charge against him or the proceeding or that he waived numerous constitutional rights by pleading guilty. Accordingly, as Defendant failed to show by a preponderance of the evidence that his prior drug convictions in 1986 and 1989 were constitutionally invalid, we conclude the district court did not err in using them to enhance his sentence under § 851.

## E. SENTENCING GUIDELINES

 Defendant argues that in applying the Sentencing Guidelines, the district court erred in two ways. First, De-

fendant contends that the district court erred in its conversion of cash to cocaine to determine Defendant's sentencing level. Second, Defendant contends that the district court erred in enhancing his sentence by two levels for his role in the offense. We review de novo a district court's application of the Sentencing Guidelines, *see United States v. Kellams*, 26 F.3d 646, 648 (6th Cir.1994), and review a district court's findings of fact for purposes of sentencing under the Guidelines for clear error. *See United States v. Williams*, 962 F.2d 1218, 1227 (6th Cir.1992). A finding is clearly erroneous if, after studying the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.1989).

### 1. Calculation of Drug Quantity

 The government bears the burden of proving, by a preponderance of the evidence, that the trial court should attribute a particular quantity of drugs to a defendant. *See United States v. Sims*, 975 F.2d 1225, 1242 (6th Cir.1992). Under the Sentencing Guidelines:

> [w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider ... the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

USSG § 2D1.1 comment. (n.12). The district court followed the Sentencing Guidelines and the recommendations set forth in Defendant's presentence report, and converted the $671,300 seized from the safe and $2,528 seized from Defendant's person to a drug quantity of 11.93 kilograms. The district court arrived at this figure because the evidence showed that Defendant sold one-sixteenth ounce quantities to Pearce for $100 regularly for many years.

The district court calculated that if Defendant sold one-sixteenth of an ounce for $100, he could sell a kilogram for $56,497, and that the money seized therefore represented about 11.93 kilograms of cocaine.

While Defendant alleges that this method was "rigid, formulaic extrapolation" that is "too speculative a method by which to arrive at a fair determination of the amount of cocaine for which [he] should be held responsible," he suggests no other method by which the district court could have calculated a drug quantity. This Court has held that in converting raw materials into drug quantities for sentencing purposes, a district court must tailor its findings to the abilities of the particular defendant. *See United States v. Hamilton*, 81 F.3d 652, 654 (6th Cir.1996). Here, the district court relied on Pearce's testimony regarding Defendant's specific drug dealing practices and prices, and Defendant does not explain why that reliance was clear error. While Defendant suggests the district court failed to determine that the cash converted to drug quantity was actually related to Defendant's drug trade, there is substantial evidence linking Defendant's drug activities to the money found in the safe and on his person. Accordingly, we conclude that the district court did not clearly err in attributing 11.93 kilograms of cocaine to Defendant.

### 2. Role in the Offense Enhancement

 Under the Sentencing Guidelines, a district court can increase a defendant's sentence by two levels if the defendant was an organizer, leader, manager, or supervisor in any criminal activity. *See* USSG § 3B1.1(c). As the application notes to the provision make clear, a defendant qualifies for a sentence enhancement under § 3B1.1 if he was "the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted ... in the case of a defendant who ... exercised management responsibility over the property, assets, or activities of a criminal organiza-

tion." USSG § 3B1.1 comment. (n.2). This Court has held that where a defendant exercises control over another participant, sentence enhancement is required, while evidence that a defendant exercised control over property, assets or activities merely permits sentence enhancement. *See United States v. Gort–DiDonato*, 109 F.3d 318, 320 (6th Cir.1997).

Although Defendant claims the district court erred in enhancing his sentence by two levels under the Guidelines, we are unpersuaded. The district court based its decision to enhance Defendant's sentence on its findings that he made the decisions about the drug transactions, he managed Ables during drug transactions, and he exercised control over the proceeds of the drug conspiracy. The testimony of Pearce and Winesburgh, and of the agents who investigated Defendant's home and his mother's home at the time of his arrest, supports these findings. Because consideration of the "entire evidence" does not lead to the firm conviction that the district court made a mistake, we conclude the district court did not clearly err in its decision to enhance Defendant's sentence by two levels for his role in the offense.

## F. PROSECUTORIAL MISCONDUCT

 Defendant alleges that the prosecutor made improper remarks during closing argument, and that the district court erred in denying a motion for mistrial on the basis of this misconduct. This Court reviews the issue of whether the government's closing argument constituted prosecutorial misconduct, which is a mixed question of law and fact, de novo. *See United States v. Clark*, 982 F.2d 965, 968 (6th Cir.1993). We have adopted a two-step approach to determining whether prosecutorial misconduct warranting reversal took place during a closing argument. *See United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir.1994). First, we must determine whether the prosecutor's remarks were improper. *See United States v. Bess*, 593 F.2d 749, 757 (6th

Cir.1979). If the remarks were improper, we must consider (1) whether proof of guilt is overwhelming; (2) whether defense counsel objected; and (3) whether the trial judge stepped in and admonished the jury. *See Carroll*, 26 F.3d at 1384 n. 6. In the final analysis, this Court should reverse a conviction based upon prosecutorial misconduct "only if the resulting prejudice permeates the entire trial." *United States v. Roberts*, 986 F.2d 1026, 1031 (6th Cir. 1993).

 Defendant argues that the prosecutor improperly commented on Defendant's failure to testify during closing argument by stating the following:

> [Defense counsel] has raised the notion that Mr. Layne did not own all that money. I mean, it was really his momma's and that's a very absurd notion, but then I again urge you, who had the combination to the safe. Mr. Layne. Who didn't know the combination to that safe. Mrs. Layne. Who had the keys to the lock boxes. Mr. Layne. Who went there and got the money to pay Mr. Winesburgh. Mr. Layne. Whose personal papers were in the closet. Mr. Layne. Is there any evidence on this record that would indicate to you that there is any source for that money other than Mr. Layne?

(Appellant's Br. at 42.) Courts have long held that it is impermissible for a prosecutor to comment during closing argument, either directly or indirectly, on a defendant's failure to testify. *See Lent v. Wells*, 861 F.2d 972, 975 (6th Cir.1988) (citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)).

Nevertheless, the remarks challenged by Defendant fall short of prosecutorial misconduct. This Court has declined to find misconduct where statements were not "manifestly intended" to reflect on a defendant's silence, or where the statements are not of such a character that a jury would "naturally and necessarily" construe them as such. *United States v.*

*Bond,* 22 F.3d 662, 669 (6th Cir.1994). In such cases, we have deemed the challenged speech a commentary on the uncontradicted nature of the government's evidence, or an effort to summarize the evidence and remark on its probative value. *See id.* Moreover, this Court has declined to find prosecutorial misconduct where objectionable remarks were isolated and did not reoccur. *See Lent,* 861 F.2d at 975. In applying these standards to the facts of this case, we believe the single comment challenged by Defendant was not improper and did not constitute prosecutorial misconduct, because it does not seem manifestly intended to highlight Defendant's silence, and because it is not necessarily so that a jury would view the comment that way. Accordingly, we see no error in the district court's decision to deny Defendant's motion for mistrial on grounds of prosecutorial misconduct.

### III.

We conclude that the government failed to sufficiently prove that Defendant conspired with another to possess with intent to distribute or to distribute crack cocaine, and to prove that Defendant used or carried a firearm during and in relation to a drug trafficking offense. Accordingly, we REVERSE the judgment of the district court and VACATE the conviction of Defendant in Counts 6 and 8 of the indictment, but AFFIRM the judgment of the district court in all other respects.