**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Scott Lynn DILLARD, Defendant–
Appellant.**

**No. 15–1912.**

United States Court of Appeals,
Sixth Circuit.

May 12, 2016.

BEFORE: DAUGHTREY, MOORE,
and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

For his role in facilitating the sale of two stolen firearms and silencers, a jury convicted defendant Scott Lynn Dillard of unlawfully possessing unregistered and stolen firearms. The district court sentenced him to 48 months' imprisonment. On appeal, Dillard contends the district court erred in admitting Rule 404(b) evidence, and wrongly concluded that he was a "prohibited person" under U.S.S.G.

§ 2K2.1(a)(4)(B) on account of being a felon and an admitted regular marijuana user. Finding no error requiring reversal, we affirm.

## I.

In June 2013, co-defendant Travis Robinson stole a MP5 machine gun, a .308 sniper rifle, and silencers for each firearm from a Battle Creek Police Officer's vehicle. Later that morning, Robinson and Dillard gathered at the house of Cody Hayes and examined Robinson's loot. Dillard specifically inspected and manipulated the guns—cocking them and moving the MP5's firing selector. The three friends also shot the guns. While at Hayes's house, Robinson told Dillard and Hayes that the guns were stolen. Hayes also admitted that he knew the guns were stolen.

Robinson asked Dillard to help him sell the firearms and silencers. So Dillard took a few pictures with his cell phone, contacted a "gun collector," co-defendant Robert Lewis, and told Lewis he was "looking to get rid of" the guns. Dillard later "indicate[d]" to a Michigan State Trooper "that he facilitated the trade of the stolen weapons to Mr. Lewis" and that Lewis "would be down to buy the guns or was down to buy the stolen weapons."

Dillard and Robinson then drove to Lewis's house, covering the guns to hide them during transit. With Dillard in charge of the negotiations, Lewis agreed to trade a dirt bike and a few hundred dollars for the guns. A typical sale price for a MP5 sold legally is about $30,000. The MP5 and the silencers are firearms that must be registered under the National Firearms Act. 26 U.S.C. § 5845(a)(6–7). They were not registered to either defendant or his co-defendants.

A jury convicted Dillard of two firearm counts: (1) possessing the unregistered MP5 and two silencers in violation of 26 U.S.C. §§ 5861(d), 5841, 5845(a)(6), (7), and 5871, and 18 U.S.C. § 2; and (2) possessing the stolen MP5 and sniper rifle in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). During sentencing, the district court found that Dillard was a "prohibited person" at the time he committed these offenses under U.S.S.G. § 2K2.1(a)(4)(B) on account of his status as a felon and as an admitted regular marijuana user. It thus calculated the sentencing Guideline range as 51 to 63 months, varied downward, and sentenced Dillard to 48 months' imprisonment.

Dillard raises two issues on appeal, which we address in turn.

## II.

Dillard's first claim of error is that the district court impermissibly allowed Robinson to testify that he and Dillard "stole things together before. . . . Quads [four-wheelers], dirt bikes, scrap metal, copper." The district court permitted this testimony under Federal Rule of Evidence 404(b) because it informed Dillard's knowledge: "if you knew about this in other dealings with Robinson that it was stolen material, it makes it more likely that he knew the firearms were stolen." It also gave a limiting instruction to the jury regarding the admission of this evidence. Assuming without deciding that the district court erred in admitting this testimony, we conclude that any such error was harmless.

"[A]n error in admitting evidence is presumed to be reversible unless [the court] conclude[s], with fair assurance ... that the judgment was not substantially swayed by [the] error." *United States v. Davis*, 547 F.3d 520, 528 (6th Cir.2008) (internal quotation marks omitted). Put differently, "an error which is not of a constitutional dimension is harmless unless it is more

probable than not that the error materially affected the verdict." *United States v. Davis,* 577 F.3d 660, 670 (6th Cir.2009) (citation omitted). "In determining whether an error is harmless, the reviewing court 'must take account of what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened.'" *United States v. Hardy,* 228 F.3d 745, 751 (6th Cir.2000) (alteration and citation omitted). "When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error." *United States v. Layne,* 192 F.3d 556, 573 (6th Cir.1999).

■ Dillard suggests that but for the inference of him having stolen items in the past with Robinson, the jury would not have found that Dillard knew or had reasonable cause to believe the firearms were stolen, which the government was required to establish in order to prove a § 922(j) violation. *See, e.g., United States v. Taylor,* 800 F.3d 701, 711 (6th Cir.2015). But outside of briefly asserting that he was unfairly prejudiced by the admission of his prior acts, Dillard offers no reply to the government's response that the error was harmless. Nor could he.

The government offered compelling evidence against Dillard on this issue. Foremost, a Michigan State Trooper testified that Dillard admitted (after being *Mirandized*) to "facilitat[ing] the trade of the stolen weapons" to Lewis, to knowing about the specific guns and silencers at issue, and to helping set up the sale between Robinson and Lewis. Dillard also admitted to the Michigan State Trooper that Lewis "was down to buy the stolen weapons." Robinson testified that he told Dillard that the guns were stolen. Hayes testified that he also knew the guns were stolen. Finally, other circumstances suggest Dillard had reasonable

cause to believe the firearms were stolen: the weapons (a sniper rifle and a non-civilian machine gun) are not ones that are readily accessible to the public; Dillard was well-versed in firearms; Robinson was generally reputed to steal items and then attempt to sell them; the guns were sold for cash and a dirt bike; and Dillard covered up the guns while transporting them to the sale.

In sum, the evidence regarding Dillard's knowledge was overwhelming. Viewing the assumed error in the context of the other evidence and the district court's limiting instruction, *Layne,* 192 F.3d at 573, it is not more probable than not that the error affected the verdict. At most, the admission of Dillard's prior thefts constitutes harmless error.

### III.

■ Dillard next contends that the district court erred in finding that he was a "prohibited person" under U.S.S.G. § 2K2.1(a)(4)(B) on account of a prior felony and admitted regular marijuana use. We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Bolds,* 511 F.3d 568, 579 (6th Cir.2007). The government bears the burden of establishing facts that would support an enhancement under the Sentencing Guidelines and must do so by a preponderance of the evidence. *United States v. Seymour,* 739 F.3d 923, 929 (6th Cir.2014).

As part of a plea agreement in 2008, Dillard pleaded "no contest" to a charge of breaking and entering in Michigan state court. The plea agreement provided that if he successfully completed probation, the court would reduce the charge to a misdemeanor. He completed probation in July 2010, but the Michigan state court did not amend the judgment reflecting the change from a felony to a misdemeanor until just

before Dillard's sentencing in this case in July 2015. Relying upon the Seventh Circuit's decision in *United States v. Lee*, 72 F.3d 55 (7th Cir.1995), the district court reasoned that as of the time of the offense, Dillard was still a felon under Michigan law and was therefore a "prohibited person." We need not decide whether this was in error because the district court properly found that Dillard's admitted drug use alternatively qualified him as a "prohibited person."

The Sentencing Guidelines broadly prohibit any "unlawful user" of "any controlled substance" from possessing a firearm or ammunition. U.S.S.G. § 2K2.1, cmt. n. 2; 18 U.S.C. § 922(g)(3). Here, Dillard admitted to the probation officer who prepared his presentence investigation report that "he first smoked marijuana at the age of 14 and routinely used it three or four times a week until his arrest for the instant offense." Although Dillard commented that "there were brief periods [during which] he was able to abstain while on probation[,] … his use of marijuana has been rather consistent for the past decade."

Dillard contends that his admission does not establish by a preponderance of the evidence that he was a drug user at the time of the offense, noting that he was not found to be in possession of drugs, did not test positive for drugs, and that the AUSA admitted his office "doesn't routinely" prosecute "unlawful user" cases involving marijuana users. Our precedent confirms, however, that "personal information given during a routine presentence interview" admitting to drug use contemporaneous with the time of the offense satisfies the "unlawful user" test. *See, e.g., United States v. Jarman*, 144 F.3d 912, 916 (6th Cir.1998) ("Jarman was designated a 'prohibited person' because he admitted to a presentence investigator at an interview

that he used marijuana, cocaine, and methamphetamine from 1987 to 1992."); *see also United States v. Nevarez*, 251 F.3d 28, 30 (2d Cir.2001) (upholding enhancement when defendant conceded "that he used illegal drugs over almost a 30 year period-interrupted only by his arrest").

## IV.

For the foregoing reasons, we affirm.