UNITED STATES of America, Plaintiff,

v.

**Wiley Keith ABRAM and Sandra Abram, Defendants.**

Civ. A. No. 93–20051–02, 93–20051–03.

United States District Court,
D. Kansas.

Aug. 12, 1993.

Leon J. Patton, Asst. U.S. Atty., for plaintiff.

Benjamin C. Wood, Olathe, KS, James R. Hobbs, Charles E. Atwell, Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the identical Motions to Suppress Evidence (Docs. 139 and 147) filed by Defendants Sandra Abram and Wiley Keith Abram. Defendants move the court to suppress all items seized from their home during a search conducted pursuant to a search warrant on October 16, 1991, and all fruits of the search. The court held an evidentiary hearing on the motions on July 26, 1993. Having considered the evidence adduced at the hearing, the parties' legal memoranda, and the arguments of counsel, the court is prepared to rule. For the reasons stated more fully below, defendants' motions to suppress are granted.

## I. BACKGROUND

During the hearing on the motions, the court heard testimony from Floyd Weaver and David Christmore, special agents with the Internal Revenue Service, as well as defendant Wiley Keith Abram. All three testified to the facts underlying the issues before the court in this motion. The facts concerning the search of the Abrams' home are for the most part uncontroverted. The court finds the version of events presented by all three witnesses generally credible. Where the witnesses disagree, the court will make a specific finding as to credibility. Based upon the credible evidence adduced at the hearing, and as required by Fed. R.Crim.P. 12(e), the court makes the following findings of fact:

1. At approximately 7:00 a.m. on the morning of October 16, 1991, Special Agent Weaver arrived at the Abrams residence to begin a search of the premises pursuant to a warrant. Weaver had reviewed the warrant the night before and acted as the team leader during the search of the residence. During the four hours the search took place, approximately six or seven IRS agents assisted in the search. All agents were not present for the entire search.

2. The search warrant generally authorized agents to seize: bank account records; insurance records and correspondence; hospital and physician records; accident reports; copying and facsimile equipment; records and documents detailing the receipt and disposition of insurance income proceeds including credit cards and financial instruments; address and telephone books; photographs of coconspirators, assets or wrecked vehicles; information relating to the receipt of insurance income proceeds and the payment of insurance premiums, computers and related equipment and software.

3. Upon arrival at the Abrams' residence, the residence was secured. The situation was explained to the Abrams and they were given copies of the search warrant. The affidavit supporting the warrant was not given to the defendants because it was sealed. This was despite the fact that the warrant stated that the affidavit was incorporated in it and made part of the warrant. The Abrams remained at the residence during the search. A female agent was assigned to check on Mrs. Abrams and her daughters.

4. The search began with the Abrams' home office where Mr. Abram operated a business. The office contained a fax machine, two filing cabinets, loose documents, file folders, and a computer. Agents seized both filing cabinets and the contents thereof, as well as all bank records and receipts. A computer specialist was called in to seize the computer. Weaver testified that agents seized the entire cabinets because they determined that the way things were filed might reveal something about the case, as well as to expedite the search process. Weaver testified that it would have taken

him five to ten minutes to read to labels on the file folders had he done so at the time. It would not have been burdensome. Weaver also testified that agents did not have any idea whether all the material in the filing cabinets were subject to seizure under the terms of the warrant. A green filing box and the Abrams' copy machine were also seized. The filing box was seized without any review of its contents. During the hearing, Weaver reviewed the contents of the filing box in approximately two to three minutes.

5. Some receipts were seized from the Abrams' bedroom as well as the office. Photo albums and numerous loose photographs found throughout the house were seized. A packet of photographs from the Abrams nightstand was seized. Included in the photographs seized were numerous family pictures. Weaver testified that the loose photographs probably should not have been seized and that it wouldn't have taken much time to review the photographs individually to determine whether they fell within the terms of the search warrant.

6. Agents seized several items from Mrs. Abram's purse such as receipts and credit cards. Included in the items seized were a Snip 'n Clip haircut coupon, a video card, and invitations to a fiftieth wedding anniversary party.

7. The agents found several guns in the bedroom and seized all guns. Special Agent Weaver testified that no guns or firearms were included in the terms of the search warrant. The agents decided they should seize the guns because Wiley Keith Abram was a convicted felon. Weaver testified that the agents did not check to see if the guns were operable and did not know when Abram had been convicted or whether he had had his rights restored under law. The agents also did not know whether Abram had ever touched the guns. One firearm seized was an antique musket which was inoperable.

8. According to Weaver, a computer was used to input all items seized and a videotape record of the house was made. Agents occasionally brought items to Weaver to determine whether they should be seized. Although agents were directed not to seize personal letters, some personal letters and unopened mail were seized. After the search was completed, a computer record of the items seized was printed out and reviewed. Several items such as drivers licenses were given back. Twelve boxes of materials and two entire filing cabinets were ultimately taken. Weaver testified that the agents did not intend to seize items beyond the scope of the search warrant.

9. Special Agent Christmore testified that after the items seized were reviewed by him following the search, one filing box approximately one-half to two-thirds full of documents was retained by the IRS. Other documents seized and removed from the home were later returned to the Abrams. Two folders from the green file box which had been seized without any review of its contents were retained by the IRS. Christmore estimated that ten to twelve percent of the items seized were later returned to the Abrams.

10. Defendant Wiley Keith Abrams testified that approximately fifty percent of the seized items were returned to the Abrams. Six boxes of documents, several packets of photographs, and four entire file cabinet drawers were admitted into evidence by the court as items returned to the Abrams. Mr. Abrams testified that four or five additional boxes of items which were returned were not brought to court. Based on the amount of evidence admitted by the court during the hearing, as well as the testimony of Special Agent Weaver as to the amount of items initially seized from the Abram residence, the court finds the testimony of Wiley Keith Abram more credible as to the amount and percentage of items returned to the Abrams by the IRS.

## II. DISCUSSION

Defendants contend that all items seized from their residence during the October 16, 1991, search conducted by agents of the IRS should be suppressed because (1) the government grossly exceeded the scope of the search warrant, (2) the search warrant was facially overbroad, and (3) there was not probable cause to search the residence of Wiley Keith and Sandra Abram. The court

will first address the issue of whether agents grossly exceeded the scope of the warrant.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." One of the principal evils against which the Fourth Amendment is directed is the government's physical entry of one's home. *See United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). It cannot be disputed that a person is entitled to privacy in his or her home. *Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). Consequently, the court concludes that defendant clearly had a legitimate expectation of privacy in their home entitling them to protection of the Fourth Amendment.

Having determined that defendants possessed a legitimate expectation of privacy in their home, the court must determine whether or not the search and seizure involved in this case was reasonable. The Fourth Amendment does not protect against all searches and seizures, but only against *unreasonable* searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). In the present case, the search at issue was conducted pursuant to a search warrant. Further, it is undisputed that items were taken from the Abram residence which were not included within the terms of the warrant. The issue for this court to determine is whether any or all of the items seized during the October 16, 1991, search must be suppressed due to the execution of the warrant.

As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized. *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir.1982) (citing *United States v. Honore*, 450 F.2d 31, 33 (9th Cir.1971)). An exception to this rule exists which permits the seizure of contraband or other incriminating evidence found inadvertently during the execution of a warrant. *Id.* at n. 1. Unlawful seizure of items outside the scope of a warrant does not necessarily render the entire

search invalid and require the suppression and return of all items seized. *Marvin v. United States*, 732 F.2d 669 (8th Cir.1984) (citations omitted). When items beyond the scope of the search warrant are seized, the usual remedy is to suppress only those specific items which were outside the scope of the warrant. *United States v. Medlin*, 798 F.2d 407, 411 (10th Cir.1986), *app. after remand*, 842 F.2d 1194 (1988). However, " 'flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.' " *Id.* (citing *Marvin*, 732 F.2d at 674–75).

It is the duty of the district court to determine, based upon the evidentiary hearing, whether agents' improper conduct in seizing items outside the scope of the warrant was so flagrant that exclusion of *all* the seized evidence is warranted. *Id.* The government argues that agents conducting the search diligently attempted to limit the items seized to those specifically enumerated in the search warrant. The government further argues that items outside the warrant were seized only because they were intermingled with documents clearly relevant to the criminal investigation and included in the warrant. According to the government, all of the documents seized in the various file cabinets and folders were intermingled to a degree that it was simply less burdensome to the agents and the defendants to remove the entire file cabinet or box. Similarly, the government argues that coupons, a video store rental card, and anniversary announcements located in Mrs. Abram's purse were intermingled with credit cards and other items to be seized pursuant to the warrant such that it was reasonable to seize them all. Whole packets of pictures and photograph albums were seized because it was more convenient to review the pictures individually at a later time than to do so on the scene.

The court concludes that the indiscriminate seizure by the government of documents, pictures, other items outside the scope of the search warrant did not comport with the requirements of the Fourth Amendment. "The wholesale seizure for later de-

tailed examination of records not described in a warrant is significant as 'the kind of investigatory dragnet that the fourth amendment was designed to prevent.'" *United States v. Tamura,* 694 F.2d 591, 595 (9th Cir.1982) (citing *United States v. Abrams,* 615 F.2d 541, 543 (1st Cir.1980)). The court further concludes that the search of the Abrams' residence was executed in flagrant disregard for the terms of the search warrant. All items seized during the search must therefore be suppressed.

In *United States v. Medlin,* the Court of Appeals for the Tenth Circuit described the basis for decisions in which the so-called "blanket exclusion rule" has been applied to suppress all evidence seized during a search, including those items particularly named within the search warrant:

> The basis of those decisions which hold that blanket exclusion is appropriate when a search warrant is executed with "flagrant disregard" for its terms is found in our traditional repugnance to "general searches" which were conducted in the colonies pursuant to writs of assistance. To protect against such invasive and arbitrary searches, the Fourth Amendment mandates that search warrants "particularly describ[e] the place to be searched and the persons or things to be seized." As the Supreme Court stated in *Marron v. United States,* 275 U.S. 192 [48 S.Ct. 74, 72 L.Ed. 231 (1927)]:
>
> > "The requirement that warrants shall particularly describe the things to be seized makes general searched under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."
>
> When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.

842 F.2d 1194, 1199 (10th Cir.1988).

In *Medlin,* agents of the Bureau of Alcohol, Tobacco, and Firearms, as well as local sheriff's department officers, executed a search of the defendant's residence pursuant to a warrant authorizing the seizure of illegally possessed or stolen firearms. During the execution of the warrant, officers also combed the defendant's property for items of suspected stolen property and seized hundreds of such items. *Id.* at 1195–96. The district court ultimately suppressed all items seized during the search, finding that the search warrant was executed with flagrant disregard for its terms. *Id.* at 1199. The district court found that the seizure of the items not included within the terms of the warrant was "'not mitigated by practical considerations' and that [the deputy who seized the items] 'employed the execution of the federal search warrant as a 'fishing expedition.'" *Id.* The district court's findings were affirmed by the Tenth Circuit.

In *United States v. Tamura,* 694 F.2d 591 (9th Cir.1982), the Ninth Circuit faced circumstances involving the wholesale seizure of documents from an office which were somewhat similar to the circumstances of the present case. In *Tamura,* agents of the Federal Bureau of Investigation executed a search warrant authorizing the seizure of various specific documents from the defendant's offices. In order to find the relevant documents, agents had to first review a computer printout, then locate a voucher which corresponded to a payment recorded on the printout, and finally locate the check that corresponded to the voucher. *Id.* at 594–95. The agents attempted to follow that procedure for a time, but concluded that it would take a long time to find all the records they were looking for unless employees in the offices helped them. The employees refused. The agents then seized eleven cardboard boxes of printouts and numerous file drawers containing vouchers and cancelled checks for detailed review at a later time.

The Ninth Circuit condemned the actions of the FBI agents but concluded that suppression of all items seized in that case was not warranted under the "flagrant disregard" standard. *Id.* at 597. The court wrote: "Under the circumstances of the present case, where the Government's wholesale seizures were motivated by considerations of

practicality rather than by a desire to engage in indiscriminate 'fishing,' we cannot say, although we find it a close case, that the officers so abused the warrant's authority that the otherwise valid warrant was transformed into a general one, thereby requiring all fruits to be suppressed." *Id.* (citations omitted).

In the present case, the court finds that the officers did act in flagrant disregard for the terms of the warrant. Although the government claims that their wholesale seizure of file cabinets, photo albums, and file boxes was motivated by practicality rather than a desire to engage in a fishing expedition, the court is not convinced. During the hearing on this motion to suppress, agents Weaver and Christmore were asked to review the contents of a file drawer and a file box that were seized during the search. It took them only minutes to do so. Further, Weaver testified that the filing box was taken without any review of its contents.

The case at hand is clearly distinguishable from the *Tamura* case. The *Tamura* agents at least attempted to find only the documents covered in the search warrant before determining that the process would be too time consuming to complete on the premises. No such attempt was made here. In the *Tamura* case, finding the relevant documents was an arduous procedure of comparing computer printouts to vouchers to cancelled checks. Here, merely reviewing the labels on file folders would have revealed whether or not documents covered by the terms of the warrant were contained therein. In *Tamura,* the agents only seized large amounts of documents after requesting that employees help locate the specific items to be seized. No such request was made of the Abrams in this case. Finally, in *Tamura,* agents were looking for select documents in the accounting department of a business. Here, agents were merely searching a home and home office.

If the wholesale seizure of documents under the facts of the *Tamura* case was deemed a "close case" by the Ninth Circuit, agents in the present case clearly crossed the line and acted in flagrant disregard for the terms of the warrant. The court is most troubled the by evidence that agents in the present case did not even *attempt* to limit their search to items included in the terms of the warrant. The court can only conclude that the IRS agents conducting the search were motivated by sheer laziness, a desire to harass the Abrams, or a desire to engage in a fishing expedition among the documents indiscriminately seized from the Abrams' home. Any of these three motives cannot be condoned by the court and can only be characterized as flagrant disregard for the terms of the search warrant.

The present case cannot be grouped together with the cases where courts have determined that the seizure of items outside the terms of a warrant were motivated only by concerns for practicality, *see e.g., Tamura,* 694 F.2d at 594, or where agents conducting the search made a good faith attempt to be selective and comply with the terms of the warrant, *see e.g., United States v. Rosenberger,* 872 F.2d 240, 242 (8th Cir.1989). Further, this is not a case where items outside the scope of the warrant were seized due to agents' good faith belief that there was probable cause to believe the items were evidence or proceeds of criminal activity, *see e.g., United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 875 (10th Cir.1992).[1] Rather, this is a case where agents simply seized all documents and photographs they found. Had a search warrant been issued authorizing such a broad seizure, it would have failed to meet the requirement under the Fourth Amendment that warrants particularly describe the things to be seized. *See United States v. Abrams,* 615 F.2d 541 (1st Cir.1980) (quoting *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927)).

Accordingly, the court finds that the agents who conducted the October 16, 1991, search of the residence of Wiley Keith and Sandra Abrams acted in flagrant disregard

---

1. The court notes that, arguably, several guns—including the antique musket—were properly seized based upon agents' good faith belief that they were evidence of a crime despite their being outside the terms of the warrant. In light of the court's holding as to the nature of the search as a whole, however, the court need not reach this issue.

for the terms of the search warrant issued. The court grants defendants' motions to suppress all evidence obtained during the search.[2]

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant Sandra Abram's Motion to Suppress (Doc. 139) is granted.

IT IS FURTHER ORDERED that Defendant Wiley Keith Abram's Motion to Suppress (Doc. 147) is granted.

**IT IS SO ORDERED.**

---

2. Defendants have also raised arguments concerning the particularity with which items were described in the warrant and the probable cause to search the residence. The court notes but does not decide these issues.