UNITED STATES of America,

v.

Shaul DEBBI, Defendant.

No. 02 CR. 808(JSR).

United States District Court,
S.D. New York.

Jan. 31, 2003.

## OPINION AND ORDER

RAKOFF, District Judge.

Defendant Shaul Debbi moves to suppress the fruits of certain searches and seizures. While the parties are poles apart in their assessment of the underlying merits of the case—with the Government asserting that Dr. Debbi, an ophthalmologist, took egregious advantage of senior citizens to repeatedly defraud Medicare and the defendant asserting that he is the innocent victim of a press-inspired witch-hunt—they substantially agree as to the facts relevant to the instant motion, which are as follows:

Since at least April 2002, Debbi has been a subject of criminal investigations in both the Southern and Eastern Districts of New York. On May 2, 2002, a grand jury subpoena was issued in the Eastern District requesting, *inter alia*, Debbi's medical records of "adult home" patients. On May 10, the Southern District prosecutors, pursuant to a sealed complaint alleging Medicare fraud, obtained an arrest warrant for Debbi. The next day, FBI Special Agent Robert Hilland attempted to execute the warrant at Debbi's home in Great Neck,

Long Island, only to learn that Debbi had left the country the day before. *See* Affidavit of Robert Hilland dated May 24, 2002 ("Hilland Aff.") ¶¶ 9–10.

Around the same time, Hilland also learned that Debbi's wife (also a medical doctor) had recently asked a family friend, Isaac (or Itzak) Aizenburg, to transport several boxes from the Debbi home to a medical building (the "Westbury building") jointly owned by Aizenburg and Mrs. Debbi. Hilland Aff. ¶¶ 10–11; Memorandum of Law in Support of Defendant Shaul Debbi's Pretrial Motions for Suppression of Evidence and Return of Illegally Seized Property ("Def.Mem.") at 19–20. Shortly thereafter, Aizenburg voluntarily consented to let FBI agents search the Westbury building and seize "any items which they determine may be related to their investigation," including the boxes. Consent to Search, Def. Ex. N; *see also* Def. Mem. at 20; Hilland Aff. ¶ 11. Upon inspection, the boxes were found to contain records responsive to the May 2, 2002 subpoena. Hilland Aff. ¶ 11.

On May 24, 2002, the Southern District prosecutor obtained from Eastern District Magistrate Judge Robert M. Levy a warrant to search Debbi's home in Great Neck and his two medical offices in Brook Plaza, Brooklyn. Agent Hilland's affidavit in support of the application alleged in conclusory fashion that Debbi had overbilled and otherwise defrauded Medicare, alleged in general terms that Debbi had performed more surgery on adult home patients than would be statistically normal, and alleged in more specific terms an instance in which Debbi had performed an unnecessary cataract operation and another instance in which he had performed eye surgery without the patient's informed consent. *See* Hilland Aff. ¶ 14. The affidavit also alleged, *inter alia*, that Debbi had attempted to conceal incriminating records, as evidenced by the transfer of the boxes to the Westbury building, and that he had fled the country fearing prosecution. *Id.* ¶¶ 9–12.[1]

Based on such information, Magistrate Judge Levy approved a warrant that, subject to certain specified limitations set forth below, broadly allowed agents to search for and seize "[e]vidence ... from the Premises and any closed containers ... therein including" treatment records, claim records, financial records, telephone, fax, and appointment records, address records, and "other records relating to or reflecting the submission of false claims," as well as "documents reflecting the identities of the owners and employees of various medical facilities with which Dr. Shaul Debbi is affiliated," and also computers, data storage devices, and other devices "which could contain or be used to transmit or store any of the foregoing records." Such seizures, however, were expressly "limited to items in furtherance of: (1) obstruction of justice; (2) the commission of health care fraud and which relate to patients who are covered by Medicare and Medicaid insurance or patients who reside at adult homes." No other limitation— such as to date range or as to doctor—was imposed. *See* Def. Ex. A.

Pursuant to this warrant, FBI agents searched Debbi's home and seized the equivalent of seven document boxes of items, of which roughly one box was subsequently returned to the defendant. Def. Ex. G; Gov't Ex. B. Among the items seized and not returned were numerous personal files (both electronic and paper),

---

1. Alleging that he was innocently abroad, Debbi returned to the United States on May 22, 2002. Hilland Aff. ¶ 13.

general correspondence, financial records, and records relating to Debbi's "private" patients, *i.e.*, non-Medicare patients who do not reside in adult homes, not to mention numerous records of Mrs. Debbi.

■ Against this background, Debbi challenges both the seizure from the Westbury building and the seizures from his home.[2] As to the former, assuming *arguendo* that Debbi retained a sufficient privacy interest in the boxes his wife gave to a third party to accord him standing to challenge the seizure, *cf. United States v. Hershenow*, 680 F.2d 847, 855–56 (1st Cir. 1982) (no privacy interest remained after leaving box of medical records in nursing home barn), that retained interest, such as it was, was here overborne by Aizenburg's consent to the search. It was Aizenburg himself who had transported the boxes to the room in the Westbury building where they were stored, a room to which Aizenburg had a legal right of access and Debbi none. While there is no evidence that the boxes were opened prior to the consent search, Debbi conceded at oral argument that they were neither taped nor otherwise sealed, *see* transcript Oct. 4, 2002 at 56, 96–97, and in challenging the seizure Debbi nowhere contends that he (or even Mrs. Debbi) told Aizenburg not to look inside what were freely openable boxes that Aizenburg, an independent third party, could reasonably be expected to open. Accordingly, the sole ground on which Debbi challenges the Westbury building seizure—*i.e.*, that it invaded his legitimate expectation of privacy—is overcome by Aizenburg's valid consent to search. *See generally United States v. Davis*, 967 F.2d 84, 86–88 (2d Cir.1992).

■ The seizures from Debbi's home present a much more problematic scenario. While the very limited particulars set forth in the supporting affidavit might not have warranted the Magistrate Judge in inferring that there was probable cause to believe that Debbi was guilty of the substantial fraud alleged in the conclusory portions of the application, a reasonable officer executing the warrant could probably still rely in executing the search on the Magistrate Judge's acceptance of these conclusions in issuing the warrant. *See generally United States v. Leon*, 468 U.S. 897, 922 & n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). But good faith reliance on a Magistrate's determination of probable cause is no basis to ignore the plain language of a warrant describing, as required by the Fourth Amendment, what is to be searched and seized; and what here saved the otherwise very broad warrant issued by the Magistrate Judge from overbreadth was its explicit command that the items to be seized be limited to evidence of either obstruction of justice or the commission of health care fraud.

Yet the seven boxes of materials seized from the Debbi home included many items that plainly fell outside these parameters, such as personal and religious files, general correspondence, family financial records, private patient records, etc. *See* transcript Oct. 4, 2002 at 10, 15–25, 40, 94–95. Moreover, the Government essentially concedes that virtually no attempt was made at the time of the seizure itself to separate evidence of Debbi's alleged fraud and/or obstruction from other documents that were seized; that it was only after repeated demands from defense counsel, extending over months, that even a limited

---

2. While Debbi's initial notice of motion also purported to challenge the seizures from the two Brook Plaza facilities, neither his written briefs nor his extensive oral argument in any respect pursued such a challenge, which therefore must be deemed abandoned and waived.

portion of improperly seized materials were returned (approximately one box); and that even after the instant motion was brought, no meaningful attempt was made to separate from what was actually seized the only items that the warrant permitted to be seized, *i.e.,* evidence of Debbi's alleged fraud or obstruction. *See id.* at 15–25, 34–35, 40, 79–85, 94–95; Def. Exs. D, E, H, I, J, K, L, M. Indeed, even though at the time of the oral argument of this motion on October 4, 2002, the Court encouraged the Government to do the necessary sifting and return what was, by any measure, improperly seized, *see* tr. at 92–94; *see also* transcript Oct. 9, 2002 at 14–22, the Government, as recently as January 17, 2003, *see* transcript, reported it had not done so, rather lamely arguing that it was awaiting this Court's decision on the instant motion—as if, on any possible rationale, the Government would not be required to return what exceeded the plain limitation language of the warrant. *See generally United States v. Matias,* 836 F.2d 744, 747 (2d Cir.1988) (search and seizure must be confined to the limitations set forth in the warrant); *United States v. Dzialak,* 441 F.2d 212, 216–17 (2d Cir. 1971) (reversing conviction based on evidence outside the warrant's scope).

It is thus evident that the Government chose to blatantly disregard the very limitations that saved the warrant from overbreadth, and that the Government continues to do so. For all its protestations of good faith, the Government felt free to invade Debbi's home, seize his records without meaningful limitation and restraint, pick over them for months thereafter without determining which were actually evidence of the alleged crimes, and even now refrain from returning what it was never entitled to seize.

 It follows from the above that the Court must, at a minimum, suppress, and order the prompt return of, any items seized from the Debbi home that are not evidence of either obstruction or health care fraud. But given the Government's misconduct, the further question is whether this is one of those rare cases in which, because the seizure was indiscriminate and substantially in excess of what the warrant provided, there must be a blanket suppression of everything seized from the Debbi home, even including such items as were properly seized. *See, e.g., United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir. 1988); *United States v. Abram,* 830 F.Supp. 551 (D.Kan.1993). This "drastic remedy," *Matias,* 836 F.2d at 748, is appropriate only where the search "[1] greatly exceeds the bounds of a warrant and [2] is not conducted in good faith." *United States v. Shi Yan Liu,* 239 F.3d 138, 141 (2d Cir.2000). While every preliminary indication is that both these requirements are here satisfied, the Court hesitates to finally so conclude without the benefit of an evidentiary hearing, at which counsel and the Court would have the opportunity to review the pertinent records, question the executing agents, and the like.

Accordingly, for the foregoing reasons, Debbi's suppression motion is hereby disposed of as follows: (1) all items seized from the Debbi home that the Government has not by this date determined are evidence of the alleged health care fraud or obstruction of justice are hereby suppressed and must be returned by no later than February 5, 2003 to counsel for Debbi (who will keep custody of them, and of any seized items previously returned, pending their production to the Court at the evidentiary hearing); (2) counsel for both sides must jointly call Chambers by no later than February 7, 2003 to schedule an evidentiary hearing relating to whether the remaining items seized from the Debbi home should also be suppressed; and (3)

Debbi's suppression motion is in all other respects denied.

SO ORDERED.