**UNITED STATES of America,**

v.

**Shaul DEBBI, Defendant.**

**No. 02 CR. 808(JSR).**

United States District Court,
S.D. New York.

April 22, 2003.

John Wing, Todd D. Ommen, Weil Gotshal & Manges, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

The Government seeks to enforce an administrative subpoena that calls for the production of items that were suppressed after an illegal search of the defendant's home. Full familiarity with the underlying facts and prior proceedings is here assumed, *see* Memorandum Order, Mar. 31, 2003; Opinion and Order, Jan. 31, 2003, 244 F.Supp.2d 235, 2003 WL 256789, but a few pertinent facts warrant repetition. On May 23, 2002, the United States Attorney's Office for the Southern District of New

York served an administrative subpoena on Dr. Shaul Debbi, addressed to him personally, demanding that he produce various records by May 24. *See* Gov't Letter Br. (Apr. 16, 2003), Ex. B.[1] Not content to wait for Debbi's response to that subpoena, on May 24 federal agents obtained several search warrants and executed those warrants that same day. As the Government subsequently conceded, and as the Court thereafter held, one of those warrants, for certain records in Debbi's home, was executed in a bad faith and patently overbroad manner; but some of the records obtained in that improper search were responsive to the May 23 subpoena.

Debbi, through counsel, immediately protested the search, and eventually moved, successfully, to suppress all items seized thereby. *See* Memorandum Order, Mar. 31, 2003. Meanwhile, however, in response to the May 23 subpoena, Debbi invoked his Fifth Amendment privilege against self-incrimination with respect to the act of producing any items responsive thereto. The Government thereupon served a new administrative subpoena, dated June 10, 2003, on Debbi's wholly-owned professional corporation, calling for production of substantially the same items sought by the May 23 subpoena. *See* Gov't Letter Br. (Apr. 16, 2003), Ex. A. Having ignored this subpoena in the subsequent ten months, the Government now seeks to compel its enforcement.

 In so doing, the Government argues that, since the May 23 subpoena was issued in good faith and since the June 10 subpoena called for essentially the same items and simply responded to Debbi's "act-of-production" objection, enforcement of the June 10 subpoena should not be barred by the intervening bad faith search. But this ignores the fact that the very same prosecutors and agents who issued and served the subpoena executed and supervised the bad faith search. Because "[s]ubpoenas must not serve as an after the fact insurance policy to validate an unlawful search," the Government cannot avoid the effect of its unlawful conduct by subsequently issuing a subpoena for the items it illegally seized. *United States v. Eng,* 971 F.2d 854, 861 (2d Cir.1992) (internal quotation marks omitted). Indeed, in the instant circumstances, where the search was found to have been not only unlawful but also executed in bad faith, to allow the Government to obtain the suppressed items by belatedly resurrecting an otherwise neglected subpoena would entirely eviscerate the prophylactic purposes of the suppression.

In addition, the Government's failure to seek enforcement of the subpoena until months after its return date but immediately after the suppression of the corresponding items wholly belies the Government's claim that it is merely seeking to enforce a slightly corrected version of the pre-search subpoena. If this were true, it would have contested the suppression itself on grounds of "inevitable discovery," an argument that it chose not to raise then and has therefore waived now.

For the foregoing reasons, the Government's motion to compel compliance with the June 10, 2002 subpoena is hereby denied.[2]

SO ORDERED.

---

**1.** Although a Grand Jury sitting in the Eastern District of New York served a similar subpoena on Debbi on or about May 7, 2002, the U.S. Attorney for the Southern District probably lacks standing to compel enforcement of that subpoena and in any event does not here seek to do so.

**2.** This denial is without prejudice to the Government's serving an immediately enforceable

trial subpoena on Debbi for production of these and other suppressed items if and when he commits to testifying at trial. *See United States v. Havens,* 446 U.S. 620, 627–28, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (holding that suppressed materials may be used to impeach a defendant). However, given that the Court has allowed the Government to retain copies of such suppressed items for use as impeachment if Debbi takes the stand, serving such a subpoena will probably prove unnecessary.