**UNITED STATES of America, Plaintiff**

**v.**

**Pradeep SRIVASTAVA, Defendant.**

**Criminal No. RWT 05–0482.**

United States District Court,
D. Maryland,
Southern Division.

March 6, 2007.

Stuart A. Berman, Office of the United States Attorney, Greenbelt, MD, for Plaintiff.

Paula M. Junghans, DLA Piper Rudnick Gray Cary U.S. LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

TITUS, District Judge.

On August 4, 2006, this Court issued an opinion and order granting a motion to suppress filed by Defendant, Dr. Pradeep Srivastava ("Srivastava") based on its conclusion that the evidence in question had been obtained in violation of the Fourth Amendment. *United States v. Srivastava,* 444 F.Supp.2d 385 (D.Md.2006). The Government has filed a Motion for Reconsideration, which Srivastava has opposed. For the reasons stated below, and for the reasons stated in the Court's August 4, 2006 opinion, the Government's Motion will be denied.

## BACKGROUND

In light of the August 4, 2006 opinion that details the facts of this case at length, the Court will not repeat the extensive factual background here. However, it is worth noting several salient facts that inform this opinion.

The Defendant in this case is a cardiologist who resides in Potomac, Maryland and who practices medicine through a Subchapter S Corporation, Pradeep Srivastava, M.D., P.C. Special agents from the Department of Health and Human Services, Office of Inspector General ("HHS–OIG"), the Federal Bureau of Investigation and the Office of Personnel Management, Office of Inspector General conducted the initial stages of a health care fraud investigation of Dr. Srivastava. That investigation ultimately led to criminal tax charges against Dr. Srivastava that are now before the Court.

On March 20, 2003, Special Agent ("SA") Jason Marrero of HHS–OIG submitted a single affidavit in support of applications for three search warrants to Magistrate Judge William Connelly. The affidavit in support of the warrants included allegations that Dr. Srivastava billed for services not rendered to patients, billed patients for duplicate services, listed inappropriate codes on patient claims, improperly billed patients for incidental services, and/or altered medical records. Judge Connelly approved all three warrants, two of which applied to Dr. Srivastava's medical offices in Greenbelt and Oxon Hill, and the third of which authorized a search of Dr. Srivastava's residence in Potomac. Each warrant contained identical substantive language that authorized the seizure of a list of enumerated "records including, but not limited to, financial· business, patient and other records related to" the Defendant's "business ... which may constitute evidence of violations of Title 18, United States Code, Section 1347."[1]

After the searches were completed, SA Marrero forwarded to the United States Attorney's Office a copy of faxes to the

---

**1.** Section 1347 provides that, "[w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

  (1) to defraud any health care benefit program; or

  (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services,

shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both." 18 U.S.C. § 1347.

New York office of the Bank of India found at Dr. Srivastava's Greenbelt location. The U.S. Attorney's Office subsequently related this information to Supervisory Special Agent ("SSA") Brad Whites of the IRS, who then conveyed the Srivastava documents and information to IRS Special Agent ("SA") Meredith Louden. The HHS agents also faxed SA Louden six pages of documents, which included copies of the Bank of India faxes found by the seizing agents. SA Louden subsequently began an investigation, which ultimately led to a formal investigation regarding possible tax fraud committed by the Defendant.

### STANDARD OF REVIEW

The Federal Rules of Criminal Procedure do not expressly provide for Motions to Alter or Amend Judgment. *United States v. Greenwood,* 974 F.2d 1449, 1468 (5th Cir.1992). However, federal courts to consider the issue have relied upon Rule 59 of the Federal Rules of Civil Procedure as an "apt analogy." *Id.See also, U.S. v. Fell,* 372 F.Supp.2d 773, 779–80 (D.Vt. 2005), *United States v. D'Armond,* 80 F.Supp.2d 1157, 1170 (D.Kan.1999).[2]

▮ Rule 59(e) allows an aggrieved party to file a motion to alter or amend a judgment within ten days of its entry. *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). As there is no provision in the Federal Rules of Criminal Procedure governing motions for reconsideration, the Court, by analogy, will be guided by the standard established in the Civil Rules. Courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not previously available, or (3) to correct a clear error of law. *Zinkand v. Brown,* 478 F.3d 634,

636–37, 2007 WL 611972, *2–3 (4th Cir. 2007). "Where the motion [to reconsider] is nothing more than a request that the district court change its mind … it is not authorized …" *United States v. Williams,* 674 F.2d 310, 313 (4th Cir.1982); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

### ANALYSIS

As the Defendant correctly points out, the Government ignores the standard of review in its Motion and instead alleges that "[D]efendant never discusses the actual text of Attachment A and cites no case to justify the suppression of the Bank of India fax. Srivastava's failure to defend the suppression order demonstrates why the court should reconsider the case." Government's Reply at 2.

Assuming that the Government intended to assert the third basis for reconsideration in its Motion, namely that the Court must correct a clear error of law, the Court has reviewed the merits. The Government raises six main arguments in its Motion for Reconsideration: (1) the Court incorrectly interpreted the warrant, (2) the documents were not seized unlawfully, (3) more documents are "related to" Srivastava's business than the Court concluded because Srivastava operates a Subchapter S Corporation, (4) the evidence obtained in the IRS investigation was lawful, (5) the evidence should not have been suppressed under the independent source and the inevitable discovery doctrines, and (6) specifically, the Bank of India faxes should not have been suppressed. This Court addressed all of these arguments in the August 4, 2006 opinion, and will not revisit the entire opinion here. With respect to

---

2. Such motions are recognized under the Maryland Rules, which apply the Rule 59 standard to Motions for Reconsideration filed by the State after a Court has granted a Motion to Suppress. Md. Rule 4–252(h)(2).

the first and third arguments, however, the Government has repackaged some of its analysis which warrants further discussion.

### A. The Search Warrant

■ The Court explained at length its reading of the warrant in the August 4, 2006 opinion. In its Motion for Reconsideration, the Government spends a great deal of time suggesting that the modifying clauses "related to the business" and "may constitute evidence of violations of ... Section 1347" should not be viewed as limits on the types of documents that could be seized from Srivastava's home and offices. The Court finds that reading the warrant so as to give meaning to these two clauses is not a "restrictive reading" as the Government alleges. Government's Motion at 5. Rather, these clauses must be read to limit the scope of the warrant in order to save it from what otherwise would be unconstitutional overbreadth. *United States v. Srivastava*, 444 F.Supp.2d 385, 393 (D.Md.2006); *see also United States v. Debbi*, 244 F.Supp.2d 235, 237 (S.D.N.Y. 2003) (finding, on similar facts, that "what here saved the otherwise very broad warrant issued by the Magistrate Judge from overbreadth was its explicit command that the items to be seized be limited to evidence of either obstruction of justice or the commission of health care fraud").

The Government goes on to cite a number of cases to support the proposition that the warrant was not an unconstitutional general warrant without the limiting language. For example, it cites to *Andresen v. Maryland*, 427 U.S. 463, 480 n. 10, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982) for the proposition that the Government should be given greater flexibility when investigating complex financial crimes that involve a so-called "paper puzzle." But this flexibility relates to the application of the particularity requirement of the warrant. *Wuagneux*, 683 F.2d at 1349 ("[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility"). It is curious that the Government cites to these cases when this Court ultimately found that the language of the warrant satisfied the particularity requirement and *was not* overly broad.

■ It its Motion for Reconsideration, the Government only superficially addresses the fact that the Court's interpretation of the warrant was only one of three key points in the Court's analysis. This Court only determined that suppression was appropriate because of two additional and important factors. First, the quantity of the materials seized is significant; the Government seized multiple boxes of documents from Srivastava's home and office. The Government in fact realized that many of the documents seized were not related to the investigation. It later returned many of the seized documents to Srivastava, although not until tax investigators had had an opportunity to review the contents. Second, the Court found SA Marrero's testimony to be quite elucidating.

The Government tries to couch SA Marrero's testimony as merely one agent's "state of mind," Government's Reply at 1. However, it is clear to the Court that SA Marrero believed the express limitations of the search warrant were meaningless, and certainly not restrictions that would limit his conduct in any way. *Srivastava*, 444 F.Supp.2d at 399. Indeed, his actions far exceeded the words of the warrants that he secured from Judge Connelly. SA Marrero specifically testified that he did not advise his agents on any limits regarding what they could collect, and thus his testimony is much more than a single agent's state of mind. *Id.* Marrero's instruction (or lack thereof) resulted in the seizure of many documents that obviously

were not authorized by the warrant such as an invitation to a cultural event and Srivastava's personal CVS "Extra Care" card. *Srivastava*, 444 F.Supp.2d at 399 n. 15. Thus the Court's suppression order was rooted in the actions of the seizing agents who grossly exceeded the scope of the warrants, and not simply the interpretation of the text of the warrants and accompanying affidavit. The warrants, as interpreted by this Court, were appropriately limited and circumscribed consistent with the Fourth Amendment; SA Marrero's execution of the warrants was without any limits or circumscription whatsoever.

### B. Documents "Related To" Srivastava's Subchapter S Corporation

In its Motion for Reconsideration, the Government argues that the type of corporation operated by Srivastava is somehow significant with respect to the volumes of documents collected by the agents, including the Bank of India faxes. The Government states, "[d]efendant's medical practice was organized as a Subchapter S corporation, and he declared his income from the corporation on his individual tax return." Government's Motion at 18. As the defendant correctly points out in his Opposition, the type of corporation operated by Srivastava is of no consequence. "Thousands—if not millions—of businesses in this country operate as S corporations; that fact makes it no more or less difficult to identify a corporate transaction than it would if Dr. Srivastava practiced through a P.C. set up as a C Corporation. Nor is it unusual for a busy professional to have some business records at home." Defendant's Opposition at 13.

Regardless of the type of business entity operated by Srivastava, the agents should not have seized personal financial records and tax returns, and they should not have seized business records *unless they tended to show violations of 18 U.S.C. § 1347.*[3] These were the two simple and basic restrictions contained in the warrant, but disregarded by SA Marrero. Additionally, it is clear from his testimony that it is not as if the agents became confused during the search as to whether the documents were business or personal—they went on a wholesale fishing expedition and seized all documents and many other personal effects at the direction of SA Marrero, without regard to whether the documents or other items were business records or demonstrative of health care fraud. *Srivastava*, 444 F.Supp.2d at 397–98.

To support the notion that some of the documents collected tended to show health care fraud, the Government argues, as it did during the suppression hearing, that the "tax returns, brokerage and bank statements, and other documents demonstrating a defendant's income from a lucrative occupation and the disposition of that income may constitute health evidence of fraud." Government's Motion at 12. But the case to which the Government cites in support of this proposition, *United States v. Jackson–Randolph*, 282 F.3d 369, 377 (6th Cir.2002), specifically states that "[t]he relevance of this evidence is to create 'the inference that the defendant does not possess a legitimate source of income to support his affluent lifestyle …'" (quoting *U.S. v. Carter*, 969 F.2d 197, 201 (6th Cir.1992)).

■ While it is true that "[s]ometimes … evidence of extreme wealth or extravagant spending is admissible under the Federal Rules of Evidence," such evidence cannot be said to be evidence of health

---

**3.** SA Marrero's affidavit, attached to the search warrant, claimed that Dr. Srivastava was not properly describing procedures and diagnoses in his patient bills. *Srivastava*, 444 F.Supp.2d at 390.

care fraud in this instance. *Jackson–Randolph*, 282 F.3d at 377. As a cardiologist, Dr. Srivastava was engaged in a legitimate and lucrative profession, unlike a typical drug dealer who has no legitimate source of income that would support an affluent lifestyle. As such, this Court rejects this so-called "proceeds of the crime" argument raised by the Government. *Srivastava*, 444 F.Supp.2d at 395. If this Court were to follow the Government's argument to its logical end, and accept that Srivastava's financial statements could be seized as evidence of money earned from allegedly fraudulent practices, the Court would have to embrace the notion that agents executing a warrant could seize any and all financial papers from anyone suspected of committing a fraud. Such a broad reading would start the Court down a slippery slope indeed, and essentially make any warrant restrictions meaningless in fraud cases. "This argument would allow virtually unlimited seizure of a lifetime's worth of documentation, which would be extremely intrusive. Moreover, the impracticability of tracing the origin of every dollar [the defendant] owned to show whether it came from some enterprise other than [the crime], casts doubt on whether the government really means to take on such a herculean task. At any rate, this rationale was not articulated in the affidavit, and therefore we need not decide whether it would have provided a justification for the warrant if it had been presented to the magistrate." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir.1999). The rationale that the financial records and tax returns seized were related to the Section 1347 investigation is also negated by the fact that the Government returned "approximately 80 percent" of the seized documents to Srivastava. *Srivastava*, 444 F.Supp.2d at 399 n. 16.

Because the acts of the agents blatantly exceeded the scope of the warrant, this Court ordered suppression of the evidence in accordance with well-established Fourth Amendment jurisprudence. *United States v. Uzenski*, 434 F.3d 690, 706 (4th Cir.2006)("Blanket suppression is therefore appropriate where the warrant application merely serves as a subterfuge masking the officers' lack of probable cause for a general search ... or where the officers flagrantly disregard the terms of the warrant") (citations omitted); *United States v. Ruhe*, 191 F.3d 376, 383 (4th Cir.1999)("In extreme circumstances even properly seized evidence may be excluded when the officers executing the warrant exhibit a "flagrant disregard for its terms")(quoting *United States v. Jones*, 31 F.3d 1304, 1314 (4th Cir.1994)); *United States v. Foster*, 100 F.3d 846, 849–850 (10th Cir.1996) ("[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant")(quoting *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir.1988)).

For these reasons, and for the reasons stated in the August 4, 2006 Opinion, it is this 6th day of March, 2007, by the District Court for the District of Maryland ORDERED that the Government's Motion for Reconsideration [Paper No. 29] is hereby DENIED.